**Mark Allen BROWN, Appellant,**

v.

**TEXAS DEPARTMENT OF INSURANCE and Jose Montemayor as Commissioner of Insurance, Appellees.**

**No. 03–99–00706–CV.**

Court of Appeals of Texas,
Austin.

Dec. 7, 2000.

---

David Korach Chapman, Fort Worth, for appellant.

John M. Hohengarten, Asst. Atty. Gen., Financial Litigation Division, Austin, for appellee.

Before Justices KIDD, YEAKEL and POWERS.*

YEAKEL, Justice.

Appellant Mark Allen Brown appeals the district court's judgment affirming the final order of appellees, the Texas Department of Insurance and the Commissioner of Insurance (together, the "Commissioner"), which revoked his Group I, Life, Health, Accident Insurance and HMO Agent's License. We will affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

In the fall of 1995, Mark Allen Brown submitted an application for a Group I, Life, Health, Accident Insurance and HMO Agent's License ("license"). *See* Tex.Ins.Code Ann. art. 21.07, § 2 (West Supp.2000). The application inquired, *inter alia*, "Exclusive of traffic citations and first offense DWI, have you ever been charged (by indictment, information, or other instrument) or convicted of any crime or offense[.]" Brown included a handwritten sheet noting guilty pleas for DWI in 1984 and 1985 and stating that he had received probated sentences for both offenses. Brown claims to have included a second handwritten page that listed criminal-mischief and theft-by-check convic-

---

* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003(b) (West 1998).

tions. The Commissioner avers that he has no record of the second handwritten page and denies its existence. The Commissioner claims that the following information should have been included with Brown's application: (1) a 1984 guilty plea to criminal mischief, resulting in a probated sentence of twelve months in jail; (2) a 1985 guilty plea to misdemeanor theft by check, resulting in supervised probation for one year; (3) a 1987 guilty plea to misdemeanor theft by check, resulting in a sentence of incarceration for one day; (4) a 1987 guilty plea to misdemeanor theft by check, resulting in a sentence of incarceration for one day; (5) a 1988 guilty plea to felony theft by check, resulting in ten years deferred-adjudication probation and an order to pay $12,485.64 in restitution; and (6) a 1992 conviction for felony theft by check, resulting in the revocation of his previous deferred adjudication and a five-year jail sentence (collectively, the "other convictions").[1]

After submitting his application, Brown called the department of insurance and spoke to Theresa Sanchez, an employee of the department's licensing division, who reviewed Brown's application for prior criminal convictions. Sanchez testified that, consistent with her routine when she speaks to applicants, she asked if there was any information, in addition to Brown's attachment, the department should be concerned about in regard to his application, and she "noted [he] didn't at-tach any certified documentation." After their conversation, Brown faxed information concerning only the two DWI convictions to Sanchez. Brown was issued his license.

The Commissioner later learned of Brown's other convictions. Sanchez testified that she again spoke with Brown and questioned him about his failure to reveal the 1988 felony theft-by-check conviction and his current probation for that crime. In response to her inquiry, Brown told Sanchez that the matter was "under appeal." Brown did not mention and Sanchez did not inquire about any additional convictions.

The Commissioner acted to revoke Brown's license.[2] Following a public hearing, an administrative law judge ("ALJ")[3] issued proposed findings of fact and conclusions of law, which the Commissioner adopted in an order revoking Brown's license.[4] Brown filed a motion for rehearing that was overruled by operation of law. Brown then sought judicial review in district court.[5] The district court affirmed the Commissioner's order. By four issues, Brown appeals the district court's judgment.

## DISCUSSION

### Commissioner's Findings of Fact

■ By his first issue, Brown contends that the Commissioner's findings of fact do

1. On January 24, 1997, after serving jail time for the 1988 felony theft by check, Brown was placed on five years' probation. Brown is currently on probation until 2002.

2. Both the Commissioner and Brown use "license revocation" or "refusal to renew" Brown's license to refer to the action against Brown. We will use only "license revocation" because the end result would be identical in either procedure.

3. *See* Act of May 30, 1993, 73d Leg., R.S., ch. 685, § 2.01, 1993 Tex.Gen.Laws 2573, 2573 (Tex.Ins.Code Ann. art. 1.33B, since repealed and codified at Tex.Ins.Code Ann. § 40.002 (West Supp.2000)) (stating that State Office of Administrative Hearings shall conduct hearing when required by insurance code).

4. *See* Act of May 30, 1993, 73d Leg., R.S., ch. 685, § 2.01, 1993 Tex.Gen.Laws 2573, 2574 (Tex.Ins.Code Ann. art. 1.33B, since repealed and codified at Tex.Ins.Code Ann. § 40.060 (West Supp.2000)) (requiring Commissioner to provide copy of order including findings of fact and conclusions of law).

5. *See* Act of May 29, 1981, 67th Leg., R.S., ch. 267, § 3, 1981 Tex.Gen.Laws 694, 695 (Tex. Rev.Civ.Stat.Ann. art. 6252–13d, § 3, since repealed and codified at Tex.Occ.Code Ann. § 53.052 (West 2000)) (allowing district-court review of license revocation).

not comply with the Administrative Procedure Act. *See* Tex.Gov't Code Ann. § 2001.141 (West 2000). We will not address the merits of this issue, however, because Brown has waived it by not including it in his motion for rehearing before the Commissioner. *See id.* § 2001.145.

The Administrative Procedure Act imposes procedural requirements for exercising the right to judicial review of agency decisions. *See id.* "[A] timely motion for rehearing is a prerequisite to an appeal in a contested case." *Id.* Such requirement ensures that the aggrieved party has exhausted all administrative remedies before seeking judicial review of the agency's decision. *Lindsay v. Sterling,* 690 S.W.2d 560, 563 (Tex.1985). However, section 2001.145 is silent as to what a motion for rehearing must contain.

■ The purpose of a motion for rehearing is to put the agency on notice as to the errors alleged by the party seeking judicial review. *Suburban Util. Corp. v. Public Util. Comm'n,* 652 S.W.2d 358, 364 (Tex.1983). Thus, motions for rehearing must be "sufficiently definite" to make the agency aware of the errors claimed and to allow the agency the opportunity to either correct the error or prepare to defend it. *Id.* at 365. Further, this Court has held that the complaining party must set forth succinctly (1) the particular finding of fact, conclusion of law, ruling, or other action by the agency that the complaining party asserts was error; and (2) the legal basis upon which the claim of error rests. *See Dolenz v. Texas State Bd. of Med. Exam'rs,* 899 S.W.2d 809, 811 (Tex.App.— Austin 1995, no writ).

Because Brown's motion for rehearing did not object to the failure of the findings of fact to conform to the Administrative Procedure Act, we overrule Brown's first issue. *See* Tex.Gov't Code Ann. § 2001.141.

### Substantial Evidence

■ By his final three issues, Brown argues that there is not substantial evidence to show his conduct constituted fraud or that his convictions directly relate to the duties of an insurance agent.[6] In a substantial-evidence review, we must first determine whether the evidence as a whole is such that reasonable minds could have reached the conclusion the agency must have reached in order to take the disputed action. *See Texas State Bd. of Dental Exam'rs v. Sizemore,* 759 S.W.2d 114, 116 (Tex.1998). The test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the agency's action. *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.,* 665 S.W.2d 446, 452 (Tex.1984). We may not substitute our judgment for that of the agency and may consider only the record on which the agency based its decision. *Sizemore,* 759 S.W.2d at 116. Furthermore, the reviewing court is prohibited from substituting its judgment as to the weight of the evidence on questions committed to agency discretion. *Charter Medical–Dallas,* 665 S.W.2d at 452.

■ The agency's findings, inferences, and conclusions are presumed to be supported by substantial evidence, and the appealing party bears the burden of showing a lack of substantial evidence. *Id.* at 453. The appealing party cannot meet this burden merely by showing that the evidence preponderates against the decision. *Id.* at 452. Although substantial evidence

6. *See* Act of May 30, 1993, 73d Leg., R.S., ch. 685, § 1.13, 1993 Tex.Gen.Laws 2559, 2571 (Tex.Ins.Code Ann. art. 1.41, since repealed and codified at Tex.Ins.Code Ann. § 81.001 (West Supp.2000)) (limiting disciplinary actions by Commissioner to two years for actions that do not involve fraud and five years for actions that do involve fraud); Act of May 19, 1981, 67th Leg., R.S., ch. 267, § 1, 1981 Tex.Gen.Laws 694, 695 (Tex.Rev.Civ.Stat. Ann. art. 6252–13c, since repealed and codified at Tex.Occ.Code Ann. §§ 53.021–.024 (West 2000)) (listing factors that licensing authority must consider in determining whether to revoke license based on the relation of licensee's criminal convictions to license responsibilities and duties).

is more than a mere scintilla, the evidence in the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence. *Id.* If substantial evidence would support either affirmative or negative findings, the reviewing court must uphold the order, resolving any conflicts in favor of the agency's decision. *Id.* at 453.

### A. Fraud

Brown's second issue on appeal attacks the sufficiency of the evidence that his convictions or past actions involved fraud.[7] Once the Commissioner learns or is made aware of a licensee's violation of the insurance code involving fraud, the Commissioner *must commence* an action to sanction the agent within five years.[8] However, if the violation does not involve fraud, the Commissioner must act by the earlier of (1) two years from the time he learned of the violation or (2) five years from the time of the violation.[9] Brown argues that there is less than substantial evidence that his conduct involved fraud; therefore, the Commissioner's action is barred by the two-year statute of limitations. Thus, if the Commissioner based the license revocation on Brown's past convictions alone *and* there is insufficient evidence that those convictions involved fraud, the Commissioner's action came too late.[10] However, we hold that the Commissioner's action was not time barred. First, Brown's omissions on his application provide an independent basis for revocation. Second, Brown's convictions did involve fraud.[11]

■ Brown objects to the Commissioner's definition of fraud. The Commission-

---

**7.** Brown specifically objects to the following findings and conclusions of the Commissioner, asserting that each is not supported by substantial evidence:

> Respondent answered "Yes" and signed the statement that certified that the information contained in his application for a license was true and correct. Respondent attached one handwritten page revealing the existence of only the crimes listed [on the first handwritten sheet he attached to his application].
>
> Respondent failed to reveal the existence of the [second-page] convictions and sentences ... in the original application for ... license.
>
> Respondent admitted that he did not disclose the [1988 theft-by-check] felony conviction ... in his Group I application.
>
> Based upon Respondent's misrepresentation of the full extent of his criminal history, Staff issued a ... license to Respondent on January 5, 1996.
>
> Based on Respondent's misrepresentation of his criminal history on his application for licensure, he is not presently fit to hold a ... license.
>
> Respondent intentionally made a material misstatement in his application for a ... license, as contemplated in Tex.Ins.Code [Ann.] art. 21.07–1 § 12(a)(2) ([West] Supp. 1999); and has obtained a ... license by fraud or misrepresentation as contemplated in Tex.Ins.Code Ann. art. 21.07–1 § 12(a)(3) ([West] Supp.1999).
>
> Respondent is guilty of fraudulent or dishonest practices, as contemplated in Tex.

Ins.Code Ann. art. 21.07–1 § 12(a)(5) ([West] Supp.1999).

> Based on the factors discussed in Finding of Fact Nos. 15–22 and 29, Respondent is not presently fit for licensure because he failed to disclose that he has multiple criminal convictions which relate directly to the duties and responsibilities of an insurance agent.

**8.** Act of May 30, 1993, 73d Leg., R.S., ch. 685, § 1.13, 1993 Tex.Gen.Laws 2559, 2571 (Tex.Ins.Code Ann. art 1.41, repealed and codified at Tex.Ins.Code Ann. § 81.001 (West Supp.2000)).

**9.** *Id.*

**10.** *Id.* Brown was most recently convicted in April of 1992 for felony theft-by-check. The Commissioner learned of Brown's other convictions on May 31, 1996, and commenced this proceeding on June 23, 1998, more than two years later.

**11.** The Commissioner could also have based Brown's license revocation on his past convictions alone. The ALJ found that Brown's theft-by-check convictions involved fraud. In reviewing the administrative record, we hold that Brown has not carried his burden of showing a lack of substantial evidence to support the finding that his theft-by-check convictions involved fraud; however, we discuss the use of Brown's convictions as a ground for license revocation more fully under Brown's third and fourth issues.

er states that his definition comes from the supreme court's decision in *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex. 1998). The Commissioner found that fraud is "a material misrepresentation, which [is] false, and which [is] either known to be false when made or [is] asserted without knowledge of its truth, which [is] intended to be acted upon, which [is] acted upon, and which cause[s] injury." Contrary to Brown's argument, the Commissioner's definition is not lacking because of its failure to require a showing of actual loss to an individual. To require that an applicant's or licensee's fraudulent act resulted in an actual pecuniary loss would be to ignore the public purpose behind licensing and regulating insurance agents. The insurance code allows the Commissioner to discipline a license holder or deny an application for an insurance license if he finds that the applicant has obtained or tried to obtain a license by fraud or misrepresentation. *See* Tex.Ins. Code Ann. art. 21.07, § 10(a)(2), (3), art. 21.07–1, § 12(a)(2), (3) (West Supp.2000). This provision allows the Commissioner to act *before* any member of the public is injured.

■ The Commissioner contends, and the record contains substantial evidence, that Brown's omission of the other convictions involved fraud. The record does not contain any evidence of Brown's second handwritten page, which he claims included his criminal-mischief and theft-by-check convictions. In addition, when questioned by Sanchez about his failure to provide information of his 1988 felony theft-by-check conviction, he answered that the matter was "on appeal." Brown did not deny that he had omitted information on the application. The only evidence that Brown provides in his favor are his own assertions that the second handwritten page was included. Resolving Brown's conflicting evidence in favor of the Commissioner, as we must, *see Charter Medical–Dallas,* 665 S.W.2d at 453, we hold that the record contains substantial evidence to support the findings that Brown did omit the other convictions on his application and that the omission involved fraud.

The Commissioner could commence an action to revoke Brown's license within five years of learning of the omission from Brown's 1995 application. The Commissioner learned of the omission on May 31, 1996 and initiated this action on June 23, 1998. We overrule Brown's second issue.

### B. Relation of Conduct to Duties

■ By his third and fourth issues, Brown argues that there is not substantial evidence that the conduct complained of by the Commissioner relates to the duties and responsibilities of being an insurance agent. *See* Act of May 19, 1981, 67th Leg., R.S., ch. 267, § 1, 1981 Tex.Gen.Laws 694, 695 (Tex.Rev.Civ.Stat.Ann. art. 6252–13c, since repealed and codified at Tex. Occ.Code Ann. §§ 53.021–.024 (West 2000)). The Commissioner may revoke a license if the licensee has been "convict[ed] of a felony or misdemeanor [that] directly relates to the duties and responsibilities of the licensed occupation." *Id.*[12] The Commissioner concluded that Brown's "four mid 1980s criminal actions resulting in four theft-by-check convictions, one of which was a 1992 felony, relate directly to the duties and responsibilities of an insurance agent." Brown does not dispute that he was convicted of theft by check, but instead draws attention to other evidence offered in the administrative hearing that reveals the circumstances surrounding the convictions.

---

12. Article 6252–13(c) does not, however, preclude the Commissioner from revoking a license that was procured by fraud. The Commissioner's conclusions of law set forth two grounds for Brown's license revocation. The first is based on Brown's failure to disclose all of his criminal convictions. The second is based on the relation of Brown's convictions to the duties and responsibilities of a licensee.

The Commissioner must consider the following when determining whether a conviction relates to the duties of an insurance agent and in determining the present fitness of a person who has been convicted of a crime: (1) the nature and seriousness of the crime; (2) the relationship of the crime to the purposes for requiring a license to engage in the occupation; (3) the extent to which a license might offer an opportunity to engage in further criminal activity of the same type as that in which the person previously had been involved; (4) the relationship of the crime to the ability, capacity, or fitness required to perform the duties and discharge the responsibilities of the licensed occupation; (5) the extent and nature of the person's past criminal activity; (6) the age of the person when the crime was committed; (7) the amount of time that has elapsed since the person's last criminal activity; (8) the conduct and work activity of the person before and after the criminal activity; (9) evidence of the person's rehabilitation or rehabilitative effort while incarcerated or after release; and (10) other evidence of the person's fitness, including letters of recommendation from various persons in contact with the convicted person. *See* Act of May 19, 1981, 67th Leg., R.S., ch. 267, § 1, 1981 Tex.Gen.Laws 694, 694–95 (Tex.Rev.Civ. Stat.Ann. art. 6252–13c, § 4(b), (c), since repealed and codified at Tex.Occ.Code Ann. §§ 53.022, .023 (West 2000)) ("article 6252–13c section 4(b) and (c)").

The record reflects that the ALJ considered every pertinent article 6252–13c section 4(b) and (c) factor in determining Brown's fitness to hold an insurance license.[13] First, the ALJ found that Brown's theft-by-check convictions involved fraud and, thus, were crimes involving moral turpitude. *See Duncan v. Board of Disciplinary Appeals*, 898 S.W.2d 759, 761 (Tex.1995) (holding that determination of whether crime involves moral turpitude is question of law); *Matter of Humphreys*, 880 S.W.2d 402, 408 (Tex.1994) ("[M]oral turpitude is implicated by crimes that involve dishonesty, fraud, deceit, misrepresentation ... or that reflect adversely on a [licensee's] honesty, trustworthiness, or fitness as a [licensee] in other respects.").

The ALJ's proposal for decision specifically noted that two of the factors in article 6252–13c were implicated by this finding—the nature and seriousness of the crime and the relationship of the crime to the ability, capacity, or fitness required to perform the duties and discharge the responsibilities of the licensed occupation.

The ALJ then analyzed the remaining factors in article 6252–13c and found the following:

(1) the extent and nature of the person's past criminal activity—Brown "has a significant number of convictions," but the criminal mischief and DWI convictions "are not particularly significant in terms of fitness to perform the activities of an insurance agent";

(2) the age of the person at the time of the commission of the crime—Brown was twenty-seven "at the time of the last and most serious indictment for theft by check.... [Twenty-seven] is an age of a mature adult";

(3) the number of years that have elapsed since the person's last criminal activity—Brown's last criminal activity occurred over ten years before the administrative hearing;

(4) the conduct and work activity of the person prior to and following the criminal activity—Brown's "conduct since his convictions has been crime-

---

**13.** The proposal for decision does not specifically state that the ALJ considered two of the article 6252–13c factors—(3) the extent to which a license might offer an opportunity to engage in further criminal activity of the same type as that in which the person previ- ously had been involved and (4) the relationship of the crime to the ability, capacity, or fitness required to perform the duties and discharge the responsibilities of the licensed occupation.

free, although his probation was revoked, in part, for failing to pay restitution payments. Moreover, [Brown] has worked without incident as a life insurance salesman since January of 1996.... [H]owever, [Brown's] failure to disclose his full criminal history on his Group I application reflects negatively on his conduct";

(5) evidence of the person's rehabilitation or rehabilitative effort while incarcerated or following release—Brown "has been crime-free for over [ten] years, although he showed some signs of irresponsibility in failing to abide by the terms of his probation";

(6) other evidence of the person's present fitness including letters of recommendation [14]—Brown submitted "many letters of recommendation," including an affidavit from his former probation officer, which stated that there had been a "misunderstanding" between Brown and his subsequent probation officer that resulted in the probation revocation. The ALJ found this evidence to mitigate some of the negative character implications of [Brown's] failure to meet the terms of his probation and, on the whole, found the group of letters provided by Brown "generally portray a positive favorable image of [him] and his present fitness for licensure"; and

(7) evidence that he has maintained steady employment and has supported his dependents and has otherwise maintained a record of good conduct and has paid all outstanding court costs, supervision fees, fines, and restitution as may have been ordered—Brown did not pay restitution until he was "forced to under the weight of a suspended five-year prison sentence," though he is now "current on all court ordered costs."

(Footnote added.)

The ALJ considered all of the factors required to be assessed by article 6252–13c and concluded that the department of insurance "met its burden of showing" that Brown was not "fit for licensure." The Commissioner adopted the ALJ's findings and conclusions.

In addition to the factors discussed above, the Commissioner has issued guidelines [15] related to determining the consequences of a criminal conviction when it considers granting a license to sell insurance. *See* 28 Tex.Admin.Code §§ 1.501–.502 (2000). These guidelines recognize that it is "very important" that licensees and license applicants be honest, trustworthy, and reliable, *see id.* § 1.502(a), and that the relationship between insurance agents and the public requires trust in and reliance upon agents because of the complex and varied nature of insurance and insurance-related products. *See id.* § 1.502(a)(1). In consideration of this "special relationship," the guidelines state that the Commissioner shall "revoke the license of any licensee if the licensee has been convicted of a felony involving moral turpitude or breach of a fiduciary duty, unless the other factors set forth in [article 6252–13(c) section 4(b) and (c)] outweigh the serious nature of the crimes involved when viewed in light of the spe-

**14.** The letters of recommendation can come from prosecution, law enforcement, and correctional officers who prosecuted, arrested, or had custodial responsibility for the person; the sheriff or chief of police in the community where the person resides; and any other persons in contact with the convicted person. *See* Act of May 19, 1981, 67th Leg., R.S., ch. 267, § 1, 1981 Tex.Gen.Laws 694, 694–95 (Tex.Rev.Civ.Stat.Ann. art. 6252–13c, § 4(c),

since repealed and codified at Tex.Occ.Code Ann. § 53.023 (West 2000)).

**15.** *See* Act of May 19, 1981, 67th Leg., R.S., ch. 267, § 4, 1981 Tex.Gen.Laws 694, 695 (Tex.Rev.Civ.Stat.Ann. art. 6252–13d, § 4, since repealed and codified at Tex.Occ.Code Ann. § 53.025 (West 2000)) (requiring each licensing authority to issue guidelines relating to its practices).

cial relationship between the licensee and the public." *Id.* § 1.502(a)(3)(E). The ALJ's proposal for decision analyzes the serious nature of Brown's crimes. The Commissioner found that Brown's theft-by-check convictions involved fraud and, thus, were crimes involving moral turpitude. The Commissioner has followed the legislature's and his own guidelines in revoking Brown's license.

We hold that the record reflects that substantial evidence supports the Commissioner's decision that Brown's past criminal convictions relate to the duties and responsibilities of an insurance agent. We overrule Brown's third and fourth issues.

## CONCLUSION

Having overruled all of Brown's issues on appeal, we affirm the district court's judgment.