# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00466-CV

**Charles Anthony (Tony) Smith, Appellant**

**v.**

**Jose Montemayor, Commissioner of Insurance, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT**
**NO. 99-07222, HONORABLE PAUL DAVIS, JUDGE PRESIDING**

## MEMORANDUM OPINION

Appellant Charles Anthony Smith applied for a local recording agent=s license with the Commissioner of Insurance. Following an administrative hearing, the administrative law judge recommended granting the license, but the Commissioner disagreed and signed an order denying Smith=s application. Smith sought judicial review in the district court, which affirmed the Commissioner=s decision. In this appeal, Smith primarily challenges the Commissioner=s consideration of two prior felony convictions in assessing Smith=s fitness for licensure and argues that the Commissioner=s order is not supported by substantial evidence. We overrule Smith=s issues and affirm the district court=s judgment and the Commissioner=s order.

## BACKGROUND

Smith filed an application with the Texas Department of Insurance (the Department) for a local recording agent=s license. The Department staff denied the application, and Smith requested a hearing. On December 14, 1998, a hearing was held before an administrative law judge with the State Office of Administrative Hearings. The Department=s staff recommended denial of Smith=s application based on Smith=s two felony theft convictions in 1974 and his failure to complete court-ordered restitution. The convictions stemmed from Smith=s role as president of Vehicle Warranty Corporation, an entity that sold service contracts relating to motor vehicles. The theft involved the sale of an unauthorized insurance product that defrauded at least 56 elderly victims of more than $37,000. Smith was sentenced to five years= imprisonment for one conviction and ten years= probation for the other. The trial court also found that Smith Aalong with others, has taken part in numerous other similar and related offenses in which the elderly victims have been unlawfully and criminally deprived of their money.@ Consequently, the court ordered Smith to pay $15,000 in restitution to 56 listed individuals and families.[1] Smith was released from custody in 1977. Evidence offered during the hearing demonstrated that Smith has paid only $1,326 in restitution. Smith testified that a motion to revoke his probation for failure to pay restitution was filed, but was unsuccessful. Smith further stated that his only other criminal convictions were for traffic tickets and a first offense for driving while intoxicated.

---

[1] The sentencing order included an attachment listing 56 individuals who were the victims of Smith=s criminal conduct. The total amount owed to all of the victims was $37,138. Smith was ordered to pay only



$15,000 of that total.

Smith also testified that he is currently in the real estate business and in the bail bonding business. He applied for the local recording agent=s license to expand his bail bonding business; he said he does not intend to enter the general insurance business.

After the hearing, the ALJ filed a proposal for decision in which he recommended granting Smith=s application for an agent=s license. The ALJ reasoned that although Smith=s theft convictions relate directly to the fiduciary duties and responsibilities of an insurance licensee, the 25 years that have elapsed since the convictions and Smith=s gainful employment since being released from prison outweighed the seriousness of his criminal activity. The ALJ relied on the factors set forth in article 6252-13c, section 4(c) of the revised civil statutes in reaching his decision.[2] *See* Tex. Occ. Code Ann. '' 53.022, .023 (West 2003). The ALJ further noted that although Smith=s failure to pay the full amount of the court-ordered restitution is a serious matter, the prosecutor=s unsuccessful attempt to revoke Smith=s probation based on his failure to pay restitution rendered the fulfillment of the restitution requirement Asomewhat ambiguous.@ The ALJ found that the negative implications of Smith=s failure to pay restitution are Aoutweighed by the remoteness of the entire episode and [Smith=s] long-standing and successful return to society.@ In sum, the ALJ found Smith to be presently fit to be licensed as a local recording agent. The ALJ submitted proposed findings of fact and conclusions of law, along with the proposal for decision that the license be granted.

---

[2] *See* Act of May 19, 1981, 67th Leg., R.S., ch. 267, ' 1, 1981 Tex. Gen. Laws 694, 694. This statute was codified. *See* Act of May 13, 1999, 76th Leg., R.S., ch. 388, ' 1, 1999 Tex. Gen. Laws 1431, 1447. For convenience, we will cite to the current occupations code sections.

4

The Commissioner rejected the proposal for decision and denied Smith=s application for an agent=s license. In his order, he modified two of the ALJ=s proposed findings of fact and two proposed conclusions of law, reasoning that the ALJ had misinterpreted the applicable law. Smith filed a motion for rehearing, which was overruled by operation of law.

Smith appealed the Commissioner=s decision to the district court. Following a hearing, the district court concluded that the Commissioner properly exercised his statutory authority in modifying the ALJ=s proposed findings of fact and conclusions of law and in concluding that Smith=s prior convictions related to his present fitness for licensure. The court therefore affirmed the Commissioner=s order.

By six issues, Smith appeals from the district court=s judgment affirming the Commissioner=s order.

## DISCUSSION

**Substantial Evidence Review**

The Commissioner=s decision is subject to review under the substantial evidence rule. *See* Tex. Gov=t Code Ann. ' 2001.174 (West 2000).**[3]** Under this rule, the reviewing court presumes that the

---

**[3]** The reviewing court may reverse the Commissioner=s determination only if the appellant=s substantive rights have been prejudiced because the Commissioner=s Afindings, inferences, conclusions, or decisions@ are:

    (A) in violation of a constitutional or statutory provision;
    (B) in excess of the agency=s statutory authority;
    (C) made through unlawful procedure;
    (D) affected by other error of law;

Commissioner=s order is supported by substantial evidence, and the appealing party has the burden of overcoming this presumption. *See Sportscoach Corp. of Am. v. Eastex Camper Sales, Inc.*, 31 S.W.3d 730, 733 (Tex. App.CAustin 2000, no pet.). The court reviews the Commissioner=s legal conclusions for errors of law and his findings of fact for support by substantial evidence. *H.G. Sledge, Inc. v. Prospective Inv. & Trading Co.*, 36 S.W.3d 597, 602 (Tex. App.CAustin 2000, pet. denied). The Commissioner=s findings are reviewed to determine whether the evidence in its entirety is sufficient that reasonable minds could have reached the conclusion that the Commissioner must have reached to justify his decision. *Id.* (citing *Texas State Bd. of Dental Exam=rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988)). The court may not substitute its judgment for that of the Commissioner as to the weight of the evidence. *Locklear v. Texas Dep=t of Ins.*, 30 S.W.3d 595, 597 (Tex. App.CAustin 2000, no pet.) (citing *Mireles v. Texas Dep=t of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999); *Public Util. Comm=n v. Gulf States Util. Co.*, 809 S.W.2d 201, 211 (Tex. 1991)). The evidence in the record may actually preponderate against the Commissioner=s decision, yet satisfy the substantial evidence standard. *H.G. Sledge*, 36 S.W.3d at 602. The true test is not whether the Commissioner reached the correct conclusion but Awhether some

---

(E)  not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F)  arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov=t Code Ann. ' 2001.174(2) (West 2000). Each of these grounds for reversal presents a question of law, which we review de novo. *See Texas Dep=t of Transp. v. Jones Bros. Dirt & Paving Contractors*, 24 S.W.3d 893, 898 (Tex. App.CAustin 2000), *rev=d on other grounds*, 92 S.W.3d 477 (Tex. 2002).

6

reasonable basis exists in the record for the action taken by the [Commissioner].@ *State v. Public Util. Comm=n*, 883 S.W.2d 190, 204 (Tex. 1994); *accord Meier Infiniti Co. v. Motor Vehicle Bd.*, 918 S.W.2d 95, 98 (Tex. App.CAustin 1996, writ denied). Finally, the Commissioner=s decision should be reversed only if the party challenging the decision demonstrates that the absence of substantial evidence has prejudiced the party=s substantial rights. *Locklear*, 30 S.W.3d at 597.

### Consideration of Criminal Convictions

As a preliminary matter, Smith argues that the Commissioner erred in considering his 1974 criminal convictions in evaluating his present fitness for licensure; he claims the convictions were too remote to be considered. The Commissioner may disqualify a person from receiving a license on the grounds that the person has been convicted of a felony that directly relates to the duties and responsibilities of the licensed occupation. Tex. Occ. Code Ann. ' 53.021 (West 2003). The legislature has provided a number of factors that the Commissioner must consider in determining whether a criminal conviction directly relates to the licensed occupation:

(1) the nature and seriousness of the crime;

(2) the relationship of the crime to the purposes for requiring a license to engage in the occupation;

(3) the extent to which a license might offer an opportunity to engage in further criminal activity of the same type as that in which the person previously had been involved; and

(4) the relationship of the crime to the ability, capacity, or fitness required to perform the duties and discharge the responsibilities of the licensed occupation.

7

*Id.* ' 53.022. In addition to these, the legislature has listed several factors for determining the fitness of a person who has been convicted of a crime to perform the duties and discharge the responsibilities of the licensed occupation:

(1)  the extent and nature of the person=s past criminal activity;

(2)  the age of the person when the crime was committed;

(3)  the amount of time that has elapsed since the person=s last criminal activity;

(4)  the conduct and work activity of the person before and after the criminal activity;

(5)  evidence of the person=s rehabilitation or rehabilitative effort while incarcerated or after release; and

(6)  other evidence of the person=s fitness, including letters of recommendation . . . .

*Id.* ' 53.023(a). The statute specifies from whom the letters of recommendation should be provided:

(A)  prosecutors and law enforcement and correctional officers who prosecuted, arrested, or had custodial responsibility for the person;

(B)  the sheriff or chief of police in the community where the person resides; and

(C)  any other person in contact with the convicted person.

*Id.* ' 53.023(a)(6). The person seeking the license has the responsibility, to the extent possible, to obtain and provide to the Commissioner the letters of recommendation from prosecutors, law enforcement, and correctional officers, as required by section 53.023(a)(6)(A). *Id.* ' 53.023(b). In addition to providing the letters of recommendation, the license applicant must furnish proof in the form required by the Commissioner that he has:

 (1) maintained a record of steady employment;

 (2) supported the applicant=s dependents;

 (3) maintained a record of good conduct; and

 (4) paid all outstanding court costs, supervision fees, fines, and restitution ordered in any criminal case in which the applicant has been convicted.

*Id.* ' 53.023(c).

 The legislature has also directed licensing agencies to issue guidelines relating to their practices; the guidelines must state the reasons a particular crime is considered to relate to a particular license. *Id.* ' 53.025 (West 2003). Accordingly, the Department has developed guidelines for determining the consequences of a criminal conviction in relation to the granting of a license to sell insurance. *See* 28 Tex. Admin. Code '' 1.501-.502 (2003); *Locklear*, 30 S.W.3d at 598. The guidelines specify that crimes involving moral turpitude, such as fraud, dishonesty, and the mishandling of funds, are considered of prime importance in determining fitness for licensure by the Department. *Id.* ' 1.502(a). The reason these particular crimes relate to insurance licenses is that the special nature of the relationship between insurance-related entities and the public, coupled with the varied nature of insurance and insurance-related products, requires that licensees be honest, trustworthy, and reliable. *Id.* ' 1.502(a)(1). The Department=s rules include the exact same factors listed in sections 53.022 and 53.023 of the occupations code, which apply to applicants who have been convicted of felonies involving moral turpitude. *See id.* ' 1.502(b). The rules specify that the Department will not issue a license to an applicant who has been convicted of a felony involving moral turpitude unless the Commissioner first finds that the factors listed in sections 53.022 and

9

53.023 of the code and in the Department=s rules outweigh the serious nature of the felony conviction when viewed in light of the occupation being licensed.  *Id.* ' 1.502(a)(3)(C).

The Department=s rules include one additional factor not found in chapter 53 of the occupations code.  The rule provides that although any felony or misdemeanor may be considered by the Department in determining whether to grant a license, a conviction that is too remote, or for some other reason does not constitute probative evidence, will not be considered.  *Id.* ' 1.502(c).  Relying on this rule, Smith argues that his criminal convictions were too remote as a matter of law to constitute probative evidence, and the Department thus failed to comply with its own rule by considering Smith=s felony convictions in determining whether to issue him a license.

Whether the Department failed to follow its own rules presents a question of law.  *BFI Waste Sys. of N. Am., Inc. v. Martinez Envtl. Group*, 93 S.W.3d 570, 575 (Tex. App.CAustin 2002, pet. filed) (citing *Sonic Drive-In v. Hernandez*, 797 S.W.2d 254, 255 (Tex. App.CCorpus Christi 1990, writ denied)).  Generally, we construe agency rules, which have the same force and effect as statutes, in the same manner as statutes, striving to give effect to the agency=s intent and following the plain language of the rule unless it is ambiguous.  *Id.* (citing *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999); *H.G. Sledge*, 36 S.W.3d at 603).  If the rule is vague or ambiguous, however, we will defer to the agency=s interpretation unless it is plainly erroneous or inconsistent with the language of the rule.  *Id.* (citing *H.G. Sledge*, 36 S.W.3d at 604).  ABecause it represents the view of the regulatory body that drafted and administers the rule, the agency interpretation actually becomes a part of the rule itself.@  *Id.* at 575-76 (citing *McMillan v. Texas Natural Res. Conservation Comm=n*, 983 S.W.2d 359, 362 (Tex.

App.C Austin 1998, pet. denied)).  If the agency fails to follow the clear, unambiguous language of its own regulation, we reverse its action as arbitrary and capricious.  *Rodriguez*, 997 S.W.2d at 255.

Generally, the rules addressing the effect of criminal conduct on license applicants were promulgated to implement chapter 53 of the occupations code.  28 Tex. Admin. Code ' 1.501.  The rules do not define what is considered Atoo remote.@  The Commissioner=s position is that a 25-year-old conviction that is directly related to the occupation for which an applicant seeks a license is not too remote to be considered during the licensing process.  Smith counters that before the Commissioner can determine whether the conviction directly relates to the licensed occupation, he must first determine whether the conviction is too old; he insists that a 25-year-old conviction is too old as a matter of law.  In light of the Department=s expressed intent of ensuring that licensees are trustworthy and reliable, we cannot say that the Commissioner=s consideration of two 25-year-old convictions that involved the defrauding of elderly victims through the sale of an unauthorized insurance product amounts to an erroneous interpretation of the Department=s rules or is inconsistent with the plain language of the rules.  We refuse to construe the Department=s rules to bar consideration of Smith=s prior convictions as a matter of law.

Smith relies on an attorney general=s opinion in support of his contention that any 25-year-old conviction is too remote to be considered by the Department in assessing his fitness for licensure.  *See* Op. Tex. Att=y Gen. No. H-441 (1974).  Although entitled to due consideration, attorney-general opinions are not binding on courts.  *City of Fort Worth v. Cornyn*, 86 S.W.3d 320, 328 (Tex. App.C Austin 2002, no pet.).  Furthermore, the opinion to which Smith cites is a 1974 opinion addressing a county bail bond board=s authority to consider convictions in issuing licenses; the applicable statute was silent as to what

11

effect a conviction should have on the board=s licensing decision.  Thus, the opinion is factually and legally

distinguishable from the case before us and is not controlling.[4]  Accordingly, we hold that the Department

was not bound by the attorney general=s opinion in interpreting its own rules and determining whether these

particular felony convictions were too remote to be considered.  We overrule Smith=s second issue.

### *Substantial Evidence*

Having determined that Smith=s felony convictions constitute probative evidence of his

present fitness for licensure, we may consider the convictions in determining whether substantial evidence

exists in the record to support the Commissioner=s decision.  The Commissioner found that Smith was twice

convicted of felony theft relating to his activity as president of Vehicle Warranty Corporation; the

corporation sold unauthorized insurance products and defrauded 56 elderly victims of over $37,000.  As a

result of his convictions, Smith was ordered to make partial restitution of $15,000 among the 56 victims.

The Commissioner acknowledged in his findings that in the 25 years that have elapsed since Smith

committed the theft, Smith has engaged in no other criminal activity other than a first-offense arrest for

driving while intoxicated.  Although Smith has shown some evidence of rehabilitation, as evidenced by his

successful business ventures, he paid only $1,302 of the $15,000 in court-ordered restitution to his elderly

---

[4] We note that contrary to Smith=s interpretation of the opinion, the attorney general stated that a 20-year-old conviction that is specifically related to the characteristics required of license applicants and is accompanied by evidence of lack of reformation may *not* be too remote to be considered by a county bail bond board in determining whether to issue a license.  Op. Tex. Att=y Gen. No. H-441.

victims. The Commissioner also noted that Smith had not provided other evidence of present fitness, such as the specific letters of recommendation required under the statute and rules.

Smith claims that the Commissioner=s determination that Smith failed to pay restitution is not supported by substantial evidence. For support, he cites the ALJ=s proposal for decision, in which the ALJ explained that because a motion to revoke Smith=s probation based on his failure to make restitution was unsuccessful, the exact status of the restitution requirement is Asomewhat ambiguous.@

During the administrative hearing, Smith did not dispute that he had been convicted of theft in 1974 and ordered to pay restitution. He also testified that he did not recall how much of the restitution he had paid. The Department=s staff attorney, however, introduced an exhibit evidencing that Smith had paid only $1,302.56. When asked if he had anything to disprove that amount, Smith responded: AI don=t have anything to offer either way.@ Smith further testified as to his understanding of the restitution order: each of the several individuals that were involved in the theft were to make restitution as well, and their payments would apply as a credit to the $15,000 Smith was ordered to pay.[5] He was to begin making payments six months after he was released from incarceration. He explained, however, that he simply did not have the money to make the payments. He further stated that he did not know whether anyone else made the payments; A[t]here may still be money owed,@ admitted Smith. Smith blamed Athe state@ for keeping him

---

[5] The sentencing order provides that Smith Ashall be given credit for any restitution made by others, provided all victims . . . have first been paid in full.@

incarcerated so long that he was prevented from Adoing what [he] could have done,@ *i.e.*, make full restitution. He felt he had Apaid more than or as much as [he] need[ed] to pay.@

With regard to the motion to revoke probation, Smith testified that towards the end of his probation, a motion to revoke was filed, but was unsuccessful. No exhibits reflecting the basis for the motion or the reason it was denied were introduced into evidence. *See* Tex. Occ. Code Ann. ' 53.023(c) (applicant=s responsibility to furnish proof of payment of all outstanding restitution); 28 Tex. Admin. Code ' 1.502(b)(3) (same). Our review of the record reveals that substantial evidence exists demonstrating that Smith failed to make restitution as ordered by the court. Smith himself testified that A[t]here may still be money owed,@ suggesting that he did not pay it all and does not know that anyone else did.

Smith also challenges the Commissoner=s finding that he failed to provide evidence of fitness, such as letters of recommendation. *See* Tex. Occ. Code Ann. ' 53.023(b) (applicant=s responsibility to furnish letters of recommendation); 28 Tex. Admin. Code ' 1.502(b)(3) (same). According to Smith, he provided several letters of recommendation and submitted them to the Department=s staff in response to staff inquiries. Smith, however, did not introduce copies of these letters as evidence at the administrative hearing; and if he was unable to obtain them (as he argues on appeal), he did not explain that to the ALJ. The Department=s rules and the relevant statute plainly place the responsibility of providing these letters on the license applicant. Tex. Occ. Code Ann. ' 53.023(b); 28 Tex. Admin. Code ' 1.502(b)(3). We thus conclude that substantial evidence supports the Commissoner=s finding that Smith failed to provide letters of recommendation. In sum, because there is ample evidence in the record to support the Commissoner=s decision, we overrule Smith=s sixth issue.

14

### *Changes to Findings and Conclusions*

By his fifth issue, Smith argues that the Commissioner=s changes to the ALJ=s findings of fact and conclusions of law were not made in compliance with the Administrative Procedure Act. The Commissioner changed the ALJ=s findings and conclusions based on section 2001.058(e)(1) of the government code, which provides:

> (e)  A state agency may change a finding of fact or conclusion of law made by the administrative law judge, . . . only if the agency determines:
>
> (1)that the administrative law judge did not properly apply or interpret applicable law, agency rules, written policies provided under Subchapter (c), or prior administrative decisions . . . .
>
> The agency shall state in writing the specific reason and legal basis for a change made under this subsection.

Tex. Gov=t Code Ann. ' 2001.058(e)(1) (West 2000). Smith does not specify to which of the modifications to the ALJ=s proposed findings of fact and conclusions of law he objects. It appears from his argument that he objects to the Commissioner=s finding that Smith is not fit for licensure[6] and to the related

---

[6] The Commissioner=s sixth finding of fact states:

The Applicant is presently *not* fit for licensure as a Local Recording Agent. This finding is based on the following factors:

a.  The Applicant was discharged from prison in 1977 *after completion of the sentencing for one conviction of a serious crime, felony theft*.

b.  Twenty-five years have lapsed since the Applicant engaged in criminal activity other

15

conclusions that Smith Ais not presently fit for licensure as his criminal convictions were for serious crimes of moral turpitude and related directly to the duties and responsibilities of an insurance agent@ and Athe Commissioner should not grant [Smith=s] application.@[7]

---

than first offense arrests for driving while intoxicated.

c. The Applicant has shown *some* evidence of rehabilitation by engaging successfully in real estate and bail bonding businesses subsequent to his release from prison; *however, Applicant has paid only $1,302.56 of the court-ordered $15,000 in restitution to 56 identified elderly victims, and has further failed to provide other evidence of fitness including letters of recommendation, as provided by TEX. REV. CIV. STAT. ANN. art. 6252-13c and 28 TEX. ADMIN. CODE Sec. 1.502.*

The italicized portions reflect language that was not in the ALJ=s proposed finding of fact, but was added by the Commissioner.

[7] The ALJ=s fifth proposed conclusion of law provided: ABased on the factors discussed in Finding of Fact No. 6, the Applicant is presently fit for licensure despite the fact his criminal convictions were for

serious crimes of moral turpitude and related directly to the duties and responsibilities of an insurance agent.@ His sixth proposed conclusion stated that Athe Commissioner should grant the application of Charles Anthony Smith for a Local Recording Agent=s license.@

17

Smith argues that the Commissioner should not have considered his 1974 convictions in determining Smith=s fitness for licensure because the ALJ determined that the convictions were too remote. Smith appears to construe the ALJ=s finding that Smith is presently fit for licensure as an implicit finding that his convictions were too remote to be considered. It is apparent from the ALJ=s proposal for decision, however, that the ALJ did consider Smith=s convictions. Indeed, the ALJ weighed the seriousness of the convictions, their relation to the licensed occupation, evidence of rehabilitative efforts, and the amount of time that had elapsed since Smith was convicted of the crimes, which he was required to do pursuant to both chapter 53 and the Department=s rules, and concluded that the passage of time mitigated in favor of granting Smith a license. Thus, the Commissioner did not modify any of the ALJ=s findings or conclusions as they relate to whether Smith=s convictions were too remote to be considered.

In changing the ALJ=s finding and conclusions that Smith was presently fit for licensure, the Commissioner explained that

> the ALJ failed to properly apply and interpret that rule [1.502] as well as the statute on which it is based, by giving the greatest weight to the mere passage of time and the Applicant=s business successes since the criminal activity, rather than to highly relevant evidence regarding the seriousness of the conduct and the harm to the segment of the public victimized by the conduct.

In his order, the Commissioner recounted many of the findings that the ALJ made in his proposal for decision. For example, the ALJ characterized the nature of Smith=s criminal activities as Aserious crimes of moral turpitude which relate directly to the duties and responsibilities of an insurance agent.@ In addition, the ALJ stated in his proposal for decision that the crimes for which Smith was convicted were Aextremely

serious and related directly to the sale of a product which was found to constitute the unlicensed practice of insurance,@ that Anumerous elderly persons were defrauded,@ and Smith Adoes not appear to have ever accepted complete responsibility for his earlier criminal activity, and expressed no remorse regarding his prior criminal activity.@

The Commissioner noted that special rules apply to applicants convicted of crimes involving moral turpitude and that Aevidence surrounding such crimes and any alleged rehabilitation is of prime importance in determining present fitness.@ The Commissioner further pointed out that although the uncontroverted evidence demonstrated that Smith had been engaged in gainful employment since his release from prison and that he has had no further criminal convictions except for misdemeanor DWIs, it is also uncontroverted that Smith failed to pay all outstanding restitution. The Commissioner viewed this failure to make restitution as strong evidence bearing on Smith=s lack of rehabilitation following his release from prison.

The Commissioner ultimately concluded that while passage of time since the criminal convictions and subsequent work activity bear some relevance to present fitness for licensure, Athey cannot form the sole basis for a decision to license an individual where the individual has not used such intervening time and business success to pay court-ordered restitution to victims of theft.@ The Commissioner thus concluded that Smith=s failure to pay restitution without explanation or mitigating factors outweighed his subsequent gainful employment. Moreover, the Commissioner determined that the ALJ failed to properly weigh the factors listed in chapter 53 and in the Department=s rules.

19

None of the Commissioner=s modifications that Smith finds objectionable involved adjudicative facts, that is, facts that require weighing the evidence and making credibility determinations.[8] *See Flores v. Employees Ret. Sys.*, 74 S.W.3d 532, 540 (Tex. App.CAustin 2002, pet. denied). Rather, the modifications reflect the Commissioner=s interpretation of the Department=s rules and applicable statutes. An agency enjoys complete discretion in modifying an ALJ=s findings and conclusions when those findings and conclusions reflect a lack of understanding or misapplication of the existing laws, rules, or policies. *See* F. Scott McCown & Monica Leo, *When Can an Agency Change the Findings or Conclusions of an Administrative Law Judge?*, 50 Baylor L. Rev. 65, 86 (1998). Furthermore, the Commissioner fully complied with the statutory requirement that he specify the reason and legal basis for the changes made to the ALJ=s findings. We hold that the Commissioner did not abuse his discretion in modifying the ALJ=s findings and conclusions and overrule Smith=s fifth issue.

**Other Evidence**

---

[8] While the Commissioner added language to proposed finding of fact number six reflecting that Smith failed to pay all court-ordered restitution and failed to provide letters of recommendation, this information is included elsewhere in the ALJ=s proposal for decision and is not a modification of the ALJ=s adjudicative fact findings.

By his third and fourth issues, Smith complains that the district court violated section 2001.175(2)(e) of the government code by failing to limit his review to the agency record. Specifically, Smith argues that the district court considered a DWI conviction and two lawsuits that were not part of the agency record, and that the court relied on an opinion, *Brown v. Texas Department of Insurance*, 34 S.W.3d 683 (Tex. App.CAustin 2000, no pet.), that was not issued until after the administrative hearing had concluded and was thus outside the administrative record. In the Commissioner=s supplemental brief filed with the district court, the Commissioner directed the court to two recent opinions by the Fort Worth court of appeals involving Smith=s applications for bail bond licenses. The Commissioner relied on the opinions as support for his argument that it was appropriate to consider Smith=s 1992 felony driving while intoxicated conviction, in conjunction with his 1974 convictions, in determining whether to grant Smith a license.[9] The Commissioner attached these two opinions to the supplemental brief.

We reject Smith=s argument for several reasons. First, Smith testified during the administrative hearing that he had been in trouble for driving while intoxicated since the 1974 convictions. Thus, the reference to a DWI conviction was not outside the administrative record. Furthermore, the Fort Worth court of appeals= opinions were not introduced into evidence. Rather, they were cited as authority

---

[9] The ALJ=s proposal for decision and the Commissioner=s order indicate that the only other criminal activity in which Smith engaged is Afirst offense arrests for driving while intoxicated.@ The two opinions out of the Fort Worth court of appeals, however, indicate that Smith had a 1992 felony DWI conviction and a 1994 felony DWI conviction. *See Smith v. Tarrant County Bail Bond Bd.*, 997 S.W.2d 870 (Tex. App.CFort Worth 1999, writ denied); *Smith v. Wise County Bail Bond Bd.*, 995 S.W.2d 881 (Tex. App.CFort Worth 1999, writ denied). While it is possible that the two opinions are referring to the same felony conviction, one felony DWI conviction nevertheless suggests that Smith has had more than mere Afirst offense arrests for driving while intoxicated.@

21

for the proposition that Smith=s DWI conviction can be considered in determining whether to grant a license application. Legal arguments and authority are not evidence. Finally, in its order, the district court found that the Commissioner properly exercised his authority when he made changes to the ALJ=s findings of fact and conclusions of law and that the Commissioner properly concluded that Smith=s prior convictions (for felony theft) related to his fitness for licensure. Based on the resolution of these issues, the court affirmed the Commissioner=s order. There is no indication that the district court even considered Smith=s DWI conviction in reaching his decision.

Similarly, the *Brown* opinion was cited as legal authority, not introduced as evidence. Legal authority need not be made a part of the administrative record to be considered by the reviewing court. Furthermore, it is of no consequence that the opinion was issued after the administrative hearing had concluded. The opinion discusses the same statutes that applied to Smith=s case. A reviewing court may consider any legal authority pertinent to the case. The district court did not err in relying on the *Brown* opinion to interpret and analyze the relevant statutes and rules.[10] We overrule Smith=s third and fourth issues.

---

[10] We also disagree with Smith=s interpretation of *Brown* and his assertion that the district court misconstrued the opinion. That opinion concerned the Commissioner=s revocation of an insurance agent=s license after the Commissioner learned that Brown failed to disclose on his application all of the offenses for which he had been charged or convicted. *Brown*, 34 S.W.3d at 686. The district court affirmed the revocation, as did this Court. *Id.* at 686, 692.

Smith contends that *Brown* does not apply to his case because the only basis for the revocation of Brown=s license was his failure to include the convictions on his license application; the convictions

22

**District Court Delay**

By his first issue, Smith alleges that the district court violated section 74.059 of the government code and consequently violated Smith=s substantial rights. Smith specifically complains of the district court=s prolonged delay in rendering judgment.

According to the record in this case, Smith filed an original petition with the district court on May 23, 2000. The district court held a hearing and admitted the administrative record into evidence on July 7, 2000. Following the presentation of oral arguments, the court took the matter under advisement. The docket sheet reflects that on June 21, 2001, the district court placed the case on its dismissal docket on its own motion. Smith filed a motion to retain on July 26, explaining that he had not intentionally delayed the case. The district court did not dismiss the case. On February 28, 2002, the district court rendered its final judgment.

---

themselves were not the reason for the revocation. We disagree. In the opinion, this Court expressly acknowledged that Brown=s license could have been revoked solely on the basis of his past convictions, without regard to the omissions in his application. *Id*. at 688, 689 n.12. This Court then went on to discuss the evidence as it related to each of the factors listed in sections 53.022 and 53.023 of the code and in the rules. *Id*. at 690-91. Thus, contrary to Smith=s interpretation, the opinion indeed discusses the relationship between past criminal convictions and a licensee=s responsibilities and is thus relevant to this case.

Section 74.059(c)(2) of the government code states: AA district . . . court judge shall: . . . rule on a case within 90 days after the case is taken under advisement . . . .@ Tex. Gov=t Code Ann. ' 74.059(c)(2) (West 1998). The statute does not provide, and Smith does not contend, that failure to comply with the statute is automatically reversible error. Rather, Smith argues that the district court=s delay in rendering judgment reflects the court=s Aobvious bias.@ Further, Smith contends that the court=s failure to promptly render judgment and the court=s setting the case on the dismissal docket caused Smith unnecessary expenses in filing a motion to retain and unnecessary delay in filing an appeal or in reapplying for licensure. He concludes that his substantial rights were violated by the court=s delay in rendering judgment.

Smith bears the burden of demonstrating that the district court=s delay in rendering judgment probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1); *see also Lloyd=s of London v. Walker*, 716 S.W.2d 99, 101-02 (Tex. App.CDallas 1986, writ ref=d n.r.e.); *Bryant v. Bruner*, 593 S.W.2d 358, 362 (Tex. Civ. App.CTexarkana 1979, no writ). This he has failed to do. Smith points to nothing in the record evidencing the district court=s Aobvious bias,@ other than the court=s delay. Smith has provided no evidence indicating that the district court intentionally delayed rendering judgment in this case in an attempt to treat Smith more harshly than other litigants. At no time while the decision was pending did Smith take any action to inquire about the case=s progress. There is nothing in the record indicating what may have caused the district court=s delay. Moreover, Smith=s filing of a motion to retain in order to avoid dismissal and his inability to immediately appeal the denial of his licensure or reapply for a license does not amount to the type of injury that mandates the automatic reversal of the district court=s

24

judgment. Accordingly, we hold that if the district court=s delay in rendering judgment can be considered error, Smith has failed to show that it is reversible error, and we overrule his first issue.

## CONCLUSION

Having overruled all of Smith=s issues on appeal, we affirm the district court=s judgment, which affirmed the Commissioner=s order denying Smith=s application for a local recording agent=s license.

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: June 19, 2003

25