B.C. SIMS, Appellant,

v.

Fred B. BRACKETT, M.D.,
et al., Appellees.

No. 13–92–575–CV.

Court of Appeals of Texas,
Corpus Christi.

April 7, 1994.

Rehearing Overruled May 26, 1994.

Bryan, and Ken Dahlberg, Law Offices of Ken Dahlberg, Corpus Christi, for appellant.

Guy Allison, Rose Vela, Allison & Huerta; Thomas F. Nye, Brin & Brin; Carlos Villarreal, Ken Fields, Hunt, Hermansen, McKibben & Barger; and Michael K. Marsh, Clay E. Coalson, Ben A. Donnell and Jeffrey A. Lacy, Meredith, Donnell & Abernethy, Corpus Christi, for appellees.

Before KENNEDY, DORSEY and FORTUNATO P. BENAVIDES[1], JJ.

## OPINION

DORSEY, Justice.

B.C. Sims, plaintiff below, appeals a take-nothing judgment in a medical malpractice case. By eight points of error, he complains of adverse rulings by which the trial court excluded his expert witnesses and limited the presentation of evidence. We reverse and remand.

### I. Facts

Sims entered Spohn Hospital for colon surgery, during which Dr. Fred Brackett removed a cancerous portion of Sims's colon. Following surgery, Sims developed intestinal blockage which Dr. Brackett treated by non-surgical methods, including administering large doses of Reglan, a drug used to increase intestinal motility. The non-surgical measures were unsuccessful at relieving the blockage, and doctors Brackett and Appel performed a second operation. The surgeons relieved the obstruction by passing a tube with a balloon-type tip through the length of the intestine. While doing this, they examined the intestine and noted no signs of leakage.

However, despite the second surgery, Sims's condition continued to deteriorate. Within a day, he was placed in intensive care where he remained for over forty days. Sims suffered intense pain, high fever, redness on the right leg, decreased flexion in the right foot, and a green, bilious discharge from his incision. He claimed that these

Bill Youngkin, Jack W. Dillard, Michele P. Esparza, Youngkin, Catlin, Bryan & Stacy,

---

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas Pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

signs indicated an intestinal leak and infection. The infection became so severe that Sims went into shock. Because of his weakened condition, he was treated conservatively with large doses of Flagyl (an antibiotic) and painkillers. Treatment of the infection was overseen by Dr. Michael Bullen, a specialist in infectious diseases. Dr. Jack Cortese, a kidney specialist, was also brought in to prevent kidney failure.

The conservative treatment succeeded in strengthening Sims generally, but he continued to experience problems. Exploratory surgery was performed. This third operation revealed an abscess in Sims's abdomen, which Dr. Brackett corrected surgically. Sims had also developed gangrene in his right leg, which the doctors had to amputate. Further, he now suffers from brain damage which he had not suffered before his entry into Spohn Hospital for the colon surgery.

## II. General Procedural Facts

Sims sued all of the doctors, Spohn Hospital, and its nurses and pharmacists for negligence. He alleged and produced evidence that during the first operation, Dr. Brackett "nicked" the bowel, the hole was not closed, and bowel fluids leaked into his abdominal cavity, causing infection and severe pain. The infection was not timely discovered by any of the doctors, and it eventually spread to the lower extremities, resulting in gangrene and requiring necessitating the leg's amputation. The large doses of medication he received, especially of Flagyl, Sims claimed, led to nerve and brain damage. Sims further alleged that the doctors failed to get the Sims's informed consent on treatment, that Spohn's nurses failed to properly chart his condition and to compel the doctors to take note of his symptoms. He faults Spohn's nurses and pharmacists for administering the unusually large doses of Flagyl and Reglan without question or verification.

The defendants presented a united front at trial, maintaining that there had been no acts or omissions constituting negligence and that Sims's problems resulted from his own health conditions and the known risks of surgery. They all agreed that Sims was too weak to undergo more surgery after the second oper-ation and that the conservative treatment he received was the best course. They attributed the gangrene to Sims's pre-existing circulation problems and low blood pressure. The nerve and brain damage, they argued, was due to a stroke. They produced evidence that the large amount of medications given was proper according to recent medical publications.

From the outset of trial, examination of the witnesses was very time-consuming. By the second day, the trial judge, frustrated by the pace, forbad all redirect and re-cross examination of witnesses. Trial continued in the following way: appellant would examine his witness then each of the four defendants would cross-examine. When a defendant called a witness, that defendant would conduct his direct examination, appellant would cross-examine, and then the three remaining defendants would cross-examine. The record shows that in the six days it took appellant to present his case-in-chief, Sims presented nine witnesses, and much trial time was consumed by motions and objections from all the parties.

## III. Exclusion of Expert Testimony

By points one and two, Sims claims that the trial court abused its discretion by excluding two of his expert witnesses. Dr. Charles Felger was excluded on the grounds that his testimony was cumulative of a prior expert and Nurse Riley on the grounds that although she was designated thirty days before trial, she was not designated as soon as practicable.

The court has the authority to exclude testimony to avoid the needless presentation of cumulative evidence. Tex.R.Civ. Evid. 403, 611. Evidence that is relevant may properly be excluded under Rule 403 if its probative value is substantially outweighed by considerations of undue delay or needless presentation of cumulative evidence. When a trial court makes a decision to admit or to exclude evidence in which it weighs competing legitimate factors in reaching his decision, the court exercises discretion. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). The trial

court has discretion to choose among only legitimate and legal alternatives. *Landon v. Jean–Paul Budinger, Inc.,* 724 S.W.2d 931, 935 (Tex.App.—Austin 1987, no writ). A reviewing court will not disturb the ruling unless the trial court abuses that discretion. *Lorusso v. Members Mut. Ins. Co.,* 603 S.W.2d 818, 821 (Tex.1980); *Ponder v. Texarkana Memorial Hosp., Inc.,* 840 S.W.2d 476, 479 (Tex.App.—Houston [14th Dist.] 1991, writ denied).

 In reviewing a claim of trial court error, we conduct a three-stage review. First, we determine whether the claimed error was preserved for our review, then, whether the trial court committed error, and finally, whether the error was harmful.

 Sims's first expert medical witness was Dr. Keith Fannin, a doctor board certified in general surgery. Dr. Fannin testified to various acts and omissions on the part of the defendants that led to Sims's complications. During rigorous cross-examination, the defendants challenged Dr. Fannin's opinions because he was a friend of Sims [2] and he lacked board certification in a more particularized specialty.

Appellant also called Dr. Charles Felger, formerly a teaching physician at Austin's Brackenridge Hospital and board certified in internal medicine. Soon after appellant began his direct examination of Dr. Felger, the trial judge called a bench conference. After a lengthy discussion, the court determined that Dr. Felger's testimony would be wholly cumulative of Dr. Fannin's. The court ruled that Felger would not be allowed to testify and that appellant must proceed with other witnesses.

At the first stage, we determine whether the error was properly preserved. To preserve a complaint that the trial court improperly excluded evidence, the complaining party must make an offer of proof as to what the excluded witness would have testified. Such an offer must be made before the court's charge is read to the jury. TEX.R.APP.P. 52(a) & (b); TEX.R.CIV.EVID. 103(b). Appel-

lees argue that Sims's offer of proof as to Dr. Felger's testimony was untimely because Sims did not make his bill of exceptions until after the jury began deliberating. However, Sims made an informal offer of proof that was sufficient under appellate rule 52(b) which states:

> No formal bills of exception shall be needed to authorize appellate review of the question whether the court erred in excluding the evidence.... A transcription of the reporter's notes showing the offer, whether by concise statement or question and answer, showing the objections made, and showing the ruling thereon, when included in the record certified by the reporter, shall establish the nature of the evidence, the objections, and the ruling.... *No further offer need be made.*

TEX.R.APP.P. 52(b) (emphasis added).

Before excluding Felger's testimony, the trial judge *sua sponte* ordered a bench conference in which he questioned counsel regarding the substance of Felger's testimony. That conference was recorded by the reporter and is part of the statement of facts. Counsel emphasized that Felger is board certified in internal medicine and specializes in gastroenterology. His testimony would have shown "a separate, independent view of what transpired." Dr. Felger would have given specific testimony on the standard of care for recovery, operative notes, and hospital charting procedures. After a long bench conference in which counsel continued to describe Dr. Felger's expected testimony, the judge excluded the evidence as cumulative. The court could not properly have so ruled unless he knew the essential substance of Dr. Felger's testimony. We hold this bench conference, outside the hearing of the jury that apprised the court of the nature of the evidence and was recorded by the court reporter, was an informal offer of proof and was sufficient to satisfy the requirements of rule 52(a). *See generally Ledisco Fin. Serv., Inc. v. Viracola,* 533 S.W.2d 951, 959 (Tex.Civ. App.—Texarkana 1976, no writ). Finding

---

**2.** Dr. Fannin was a friend of Sims's and stated that the two of them had sometimes gone fishing together.

the record sufficient to preserve error, we next look to whether the court erred.

The cause of Sims's intestinal leak was a contested issue. Defendant Brackett gave several different explanations for its cause, including an inadvertent surgical nick. Dr. Fannin, the general surgical expert for the plaintiff, had the firm opinion that the leak was caused by a surgeon's nick; however, his credibility was diminished because he was a friend of the plaintiff and not a specialist. In contrast, Dr. Felger was a board certified internist, specializing in gastroenterology and had taught at a large metropolitan hospital. The difference in the two expert's credentials and Felger's lack of a personal relationship with Sims in all likelihood would have enhanced Felger's credibility compared to Fannin's.

■ In a medical malpractice trial expert medical testimony is a necessity, and the matters at issue are addressed by opposing experts. In order for the trial court to exclude Dr. Felger's testimony it must have found that its probative value was "*substantially outweighed* by ... [the] needless presentation of cumulative evidence." TEX. R.CIV.EVID. 403 (emphasis added). To exclude evidence under Rule 403, the trial court must conduct a balancing test and only when the balance weighs significantly on the side of judicial efficiency may relevant evidence be excluded as cumulative. The excluded evidence here had great probative value and was not merely cumulative of Dr. Fannin's testimony. *See In re Watson,* 720 S.W.2d 806, 808 (Tex.1986) (trial court erred in excluding 81 letters holding they were not "merely cumulative" and were the strongest rebuttal evidence available); *Ponder,* 840 S.W.2d at 479 (error in excluding part of expert witness' testimony on causation, a hotly contested issue, alleged to be merely cumulative); *see also Jones v. Colley,* 820 S.W.2d 863, 866–67 (Tex.App.—Texarkana 1991, writ denied). The test is not merely whether the evidence to be adduced from the two witnesses is similar, but also whether the excluded testimony would have added substantial weight to the offering parties' case. If so, it is error to exclude it. *Bohmfalk v.*

*Linwood,* 742 S.W.2d 518 (Tex.App.—Dallas 1987, no writ) (trial court improperly excluded disinterested witness whose testimony corroborated testimony of interested witness).

We hold that the trial judge abused his discretion in excluding Dr. Felger's testimony on the hotly contested issues in this case.

■ Appellant complains of the court's exclusion of Nurse Riley as an expert witness by point two. Sims designated Nurse Riley and a pharmacist as expert witnesses on the thirtieth (30) day before trial. Spohn Hospital moved to strike on grounds she was not designated "as soon as practicable" under rule 166b. *See* TEX.R.CIV.P. 166b(6)(b). Further, in response to appellant's designation, Spohn designated nurse and pharmacist experts seventeen days before trial. Appellant pointed out that Spohn designated a nurse and two doctors as experts (which they decided not to call) the day appellant designated their nurse. The trial court struck all of those experts as a sanction against both parties' "gamesmanship."

■ The party opposing a witness has the burden of producing evidence to show that the designation was not "as soon as practical." *Mentis v. Barnard,* 870 S.W.2d 14, 16 (1994). Spohn claimed that appellant never designated Nurse Riley in answers to the interrogatories it propounded shortly after suit was filed in 1989. The objection is the same as that found to be inadequate in *Mentis. Id.* at 15. Simply advising the court how long the case had been pending does not by itself establish as lack of due diligence. *Id.* at 16.

■ We hold that the trial court erred in striking Riley; however, appellant cannot demonstrate harm because Nurse Riley's deposition testimony is not properly before us. Counsel made no informal offer of proof and the deposition was not timely offered.[3] We overrule point two.

In order to determine whether the error excluding Felger was harmful, we review the entire proceedings and briefly outline the procedural context in which both Riley's and

---

**3.** The deposition was offered while the jury was deliberating.

Felger's testimony were excluded. *Gee v. Liberty Mutual Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989); *Ponder*, 840 S.W.2d at 479.

## IV. Conduct of the Trial

■ The trial judge has the power and obligation to control his courtroom for the purposes of ascertaining the truth, promoting judicial economy, and protecting witnesses. Tex.R.Civ.Evid. 611(a). Rule 611 states:

The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation *effective for the ascertainment of the truth*, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

*Id.* (emphasis added). The court has some leeway in the order of proceedings in multi-party cases. *See* Tex.R.Civ.P. 265 (not specifically addressing the order of cross-examination when there are multiple "adverse" parties). However, Rule 611 and other rules governing conduct of a trial, must be construed to the end that the truth may be ascertained and proceedings justly determined. Tex.R.Civ.Evid. 102. We consider the trial court's conduct of this trial as background for appellant's complaints.[4]

On day two of trial, the court, in the interest of speed of presentation of the case, denied the parties redirect and recross examination of witnesses except on leave of court.[5] Re-direct is intended to permit the witness to explain answers given on cross-examination and to amplify new material elicited for the first time. The intent is to prevent the jury from being left with a false and incomplete picture created by the latitude counsel is afforded on cross-examination and counsel's ability to use leading questions. It is sometimes said that re-direct examination for this purpose is a matter of right. *See Southland Life Ins. Co. v. Norwood*, 76 S.W.2d 166, 167–68 (Tex.Civ.App.—Fort Worth 1934, writ dism'd); *Martini v. Power Banking Co.*, 33 S.W.2d 466, 469 (Tex.Civ.App.—Fort Worth 1930, writ dism'd); *see generally* Ray, Guide

to the Texas Rules of Evidence: Civil and Criminal § 621 (Texas Practice 1980).

The prohibition on re-cross and re-direct examination continued in force during the defendants' case-in-chief. Doctors Cortese and Bullen each testified during his own case-in-chief. Doctors Cortese and Bullen each testified during his own case-in-chief, Sims cross-examined, and the remaining defendants then followed, "cross-examining" an essentially friendly witness. Therefore, the appellees were able to use each other as experts to exonerate themselves, with no opportunity for rebuttal by appellant. Appellant's counsel attempted to alleviate the disparity by requesting a different order of examination, but he was denied. Finally, Brackett and Appel only presented evidence consisting of answers to written interrogatories from several individuals Dr. Fannin claimed to have consulted while preparing for the case. This evidence came in after the trial court recessed the trial for one month following the plaintiff's and two defendants' case-in-chief.

■ The control given the trial judge must be exercised reasonably; a party must be given a fair opportunity to present its case so the jury may ascertain the truth. *Prezelski v. Christiansen*, 775 S.W.2d 764, 766 n. 2 (Tex.App.—San Antonio 1989), *rev'd on other grounds per curiam*, 782 S.W.2d 842 (Tex. 1990). If a party is denied the right to make a fair presentation to the jury, the court has not acted reasonably and has abused its discretion. The exclusion of Felger's testimony as well as the denial of redirect and recross examination denied appellant the opportunity to meet and rebut appellees' defenses and to present his case.

While we need not determine whether the aforementioned procedures were proper, they suffice to establish the context in which the exclusion of Dr. Felger's testimony occurred. These procedures magnified the harmful effect of the exclusion of Felger's testimony. Even allowing that rules 403 and 611 somewhat limit the right to re-direct and re-crossexamination, considerations of due

---

4. Appellant makes this complaint by point of error four, however, the point is not preserved for our separate review.

5. The trial judge refused Sims's request to redirect Fannin to rebut new material the defendants elicited on cross.

process and fundamental fairness require us to conclude that the trial court's orders here overstepped the bounds of reasonability, denied appellant his right to re-direct, and compounded the harm appellant suffered. The excluded testimony was critical in and of itself, as it was material to issues hotly contested throughout the trial. *Mentis,* 870 S.W.2d at 16. Moreover, we are convinced that the error here amounted to such a denial of appellant's rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. TEX. R.APP.P. 81(b)(1). Felger's exclusion, combined with other procedural rulings made the trial materially unfair and therefore constituted harmful error. *See generally Soefje v. Stewart,* 847 S.W.2d 311, 315 (Tex.App.—San Antonio 1992, writ denied). We sustain appellant's first point of error.

The exclusion of Riley's testimony, which we have held to be abuse of discretion, was not preserved. We overrule point two.

Because of our disposition of point one, we do not address appellant's additional points of error. TEX.R.APP.P. 90(a). Accordingly, we REVERSE the trial court's judgment and REMAND the cause for a new trial.

FORTUNATO P. BENAVIDES not participating.