COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-080-CV

 

 

CITY OF ARLINGTON, TEXAS AND THE                                APPELLANTS

LICENSE
AND AMORTIZATION APPEAL 

BOARD
OF THE CITY OF ARLINGTON

 

                                                   V.

 

CENTERFOLDS, INC. AND                                                      APPELLEES

STEVEN
WILLIAM CRAFT

 

                                              ------------

 

           FROM
THE 352ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








This is an appeal from the
trial court=s summary
judgment in favor of appellees Centerfolds, Inc. and Steven William Craft on
procedural due process grounds with regard to the denial of appellees= application for a location exemption for a sexually oriented business
(SOB) in Arlington, Texas.  In four
issues, appellants the City of Arlington, Texas and the License and
Amortization Appeal Board of the City of Arlington contend that (1) this case
should be dismissed because appellees do not have standing, (2) appellees
waived their due process claims by failing to raise them at the hearing before
the Board, (3) appellees failed to establish their due process claims, and,
alternatively, (4) a genuine issue of material fact precludes summary judgment.  We affirm.

                                        Background Facts

Appellee Craft is Vice
President of appellee Centerfolds, which leases property on West Division
Street in Arlington.  Since 1988,
Centerfolds has operated several SOBs at that location.  In July 2003, Centerfolds was operating an
SOB named La Bare at the location, which featured male dancers and catered to
female patrons.  In July and August 2003,
appellees closed La Bare and began renovating the premises to start a new SOB,
Chicas Locas, which featured female dancers and catered to mostly Hispanic male
customers.  Centerfolds did not open
Chicas Locas to customers until late August 2003. 








In 1992, the City passed an
ordinance prohibiting the operation of an SOB within 1,000 feet of a residence,
thus making Centerfolds= operation a
nonconforming use under the new ordinance. 
Arlington, Tex., Code, Sexually
Oriented Business Ordinances art. III, '' 3.01-.02(A) (2004).  SOBs that
were already in operation when the ordinance was passed and that are considered
nonconforming uses under the ordinance are allowed to apply for an exemption to
the location restrictions each year.  Id.
' 3.02(A).  The building in which
Chicas Locas is located is within 1,000 feet of two residential areas. 

To obtain a location
exemption, an SOB must prove its entitlement to the exemption by a
preponderance of the evidence at a hearing before the Board.  Id. art. IV, ' 4.11.  Section 4.11(E) of the
ordinance provides that the Board may grant the exemption if it makes the
following findings:

1.     That the location of the [SOB] will not have a detrimental
effect on nearby properties or be contrary to the public safety or welfare;

2.     That the location of the [SOB] will not downgrade the property
values or quality of life in the adjacent areas or encourage the development of
urban blight;

3.     That the location of the [SOB] in the area will not be contrary
to any program of neighborhood conservation, nor will it interfere with any
efforts of urban renewal or restoration; and

4.     That all other applicable provisions of [the SOB ordinance] will
be observed.

 

Id. ' 4.11(E).  Beginning Aa couple of years@ after the passage of the new SOB ordinance, Centerfolds applied for,
and the Board granted, such an exemption each year. 








On September 22, 2003, after
Centerfolds had converted its business to Chicas Locas from La Bare, appellees
applied to renew their location exemption for 2004.  The chief of police denied the application
because of the club=s proximity
to a residential area.  After a hearing
at which appellees and the City both presented evidence, the Board denied the
exemption application on January 20, 2004. 
Appellees appealed the Board=s decision to the district court. 
Id. ' 4.09. 








Appellants filed a motion for
partial summary judgment contending that the Board=s decision must be affirmed based on the substantial evidence standard
of review.[1]  In their response, appellees contended that
the Board=s decision
could not be upheld on substantial evidence grounds because they were denied
procedural due process during the hearing before the Board. Specifically, appellees
contended, among other things, that they were not allowed to cross-examine
members of the public who made remarks to the Board in a public comment session
held before the hearing, that Board members impermissibly considered the
unexamined public comment in deciding to deny appellee=s request for a location exemption, that appellees were denied full
and effective cross-examination of witnesses at the hearing because they were
not allowed to re-examine witnesses after Board members asked questions of
them, and that the Board failed to file required findings of fact and
conclusions of law in support of its decision. 

The trial court denied
appellants= motion for
summary judgment because of the procedural due process concerns; however,
because appellees had failed to file their own motion for summary judgment, the
trial court could not grant them the relief they had asked for in their
response:  for the case to be remanded to
the Board for a new hearing.  Appellees
then filed a motion for summary judgment raising the same procedural due
process grounds.[2]  The trial court granted the summary judgment
motion without specifying any particular grounds, vacated the Board=s order denying appellants= application for a location exemption for 2004, and remanded the case
to the Board for a trial de novo on appellees= application for a location exemption. 

                                       Standard
of Review








A plaintiff
is entitled to summary judgment on a cause of action if it conclusively proves
all essential elements of the claim.  See
Tex. R. Civ. P. 166a(a), (c); MMP,
Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986).  When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s favor.  IHS Cedars
Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex.
2004).  Questions of law are appropriate
matters for summary judgment.  Rhone‑Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); Westchester Fire Ins.
Co. v. Admiral Ins. Co., 152 S.W.3d 172, 178 (Tex. App.CFort Worth 2004, pet. filed) (op. on reh=g).  Summary judgment is proper
in an appeal to the trial court pursuant to the substantial evidence review
because the only issue before the trial court is a question of law.  In re Edwards Aquifer Auth., 217
S.W.3d 581, 587 (Tex. App.CSan Antonio 2006, orig. proceeding); Parks v. Harris County Civil
Serv. Comm=n, No. 08-04-00223-CV, 2006 WL 357877, at *3 (Tex. App.CEl Paso Feb. 16, 2006, no pet.); Arrellano v. Tex. Employment Comm=n, 810 S.W.2d 767, 770-71 (Tex. App.CSan Antonio 1991, writ denied).

                                              Standing








In their
first issue, appellants contend that appellees lack standing to challenge the
Board=s decision because they did not fulfill the requirements to apply for
an exemption.  According to appellants,
under section 3.02 of the City=s SOB ordinance, only an SOB that has Acontinuously operated@ has standing to apply for an exemption under section 4.11.  Although the City did not plead the matter at
trial, it contends that it may raise the matter for the first time on appeal
because standing implicates the trial court=s subject matter jurisdiction.

Applicable
Law

A plaintiff
must have both standing and capacity to bring a lawsuit.  Austin Nursing Ctr., Inc. v. Lovato,
171 S.W.3d 845, 848 (Tex. 2005); Coastal Liquids Transp., L.P. v. Harris
County Appraisal Dist., 46 S.W.3d 880, 884 (Tex. 2001).   The issue of standing focuses on whether a
party has a sufficient relationship with the lawsuit so as to have a
justiciable interest in its outcome.  Lovato,
171 S.W.3d at 848.  Standing, therefore,
focuses on who may bring an action, M.D. Anderson Cancer Ctr. v.
Novak, 52 S.W.3d 704, 708 (Tex. 2001); In re Guardianship of Archer,
203 S.W.3d 16, 23 (Tex. App.CSan Antonio 2006, pet. denied), and is concerned with whether the
claimant has a particularized injury distinct from that suffered by the general
public.  Bland ISD v. Blue, 34
S.W.3d 547, 555-56 (Tex. 2000); All Seasons Window & Door Mfg., Inc. v.
Red Dot Corp., 181 S.W.3d 490, 497 (Tex. App.CTexarkana 2005, no pet.).








Standing requires that there
be a real controversy between the parties that will actually be determined by
the judicial declaration sought.  Lovato,
171 S.W.3d at 849.  This means that
litigants must be Aproperly
situated to be entitled to [a] judicial determination.@  Id. (quoting 13 Charles Alan Wright, Arthur R. Miller, &
Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d ' 3531, at 338‑39 (2d ed. 1984)). 
Without standing, a court lacks subject matter jurisdiction to hear the
case.  Id.; Tex. Ass=n of Bus. v. Tex. Air Control Bd., 852
S.W.2d 440, 443 (Tex. 1993).  Thus, the
issue of standing may be raised for the first time on appeal.  Lovato, 171 S.W.3d at 849.

The issue of capacity,
however, Ais conceived
of as a procedural issue dealing with the personal qualifications of a party to
litigate.@  Id. at 848 (quoting 6A Charles Alan Wright, Arthur R. Miller, &
Mary Kay Kane, Federal Practice and Procedure: 
Civil 2d ' 1559, at
441 (2d ed. 1990)).  Our supreme court
has distinguished between standing and capacity, stating that A[a] plaintiff has standing when it is personally aggrieved, regardless
of whether it is acting with legal authority; a party has capacity when it has
the legal authority to act, regardless of whether it has a justiciable interest
in the controversy.@  Nootsie, Ltd. v. Williamson County
Appraisal Dist., 925 S.W.2d 659, 661 (Tex. 1996).  In contrast to a challenge to standing, a
challenge to a party=s capacity
must be raised by a verified pleading in the trial court.  Tex.
R. Civ. P. 93(1)-(2); Lovato, 171 S.W.3d at 849.

 

 








Analysis

Section 3.02(A) of the City=s SOB ordinance provides that

[a]ny
[SOB] lawfully operating prior to the effective date of Ordinance No. 92-117
[the SOB ordinance], that is in violation of Section 3.01 [setting forth the
zoning and location restrictions for SOBs] and has continuously operated
and maintained a valid and effective [SOB] license at such location,
shall be deemed a nonconforming [SOB]. . . .  Any nonconforming status shall terminate if
the [SOB] voluntarily discontinues operating as a[n] [SOB] or
abandons such use at such location for thirty (30) days or more, or if
there has been a final administrative determination . . . denying an
application for such business at such location without further appeal, or a
judicial determination upholding such denial.

 

Arlington, Tex., Code,
Sexually Oriented Business Ordinances art. III, ' 3.02(A) (emphasis added). 
According to appellants, an SOB that has failed to continuously operate
is not entitled to request an exemption from the location restrictions.








The evidence at the Board
hearing showed that appellees had shut down La Bare for at least part of July
and August 2003 for the purpose of renovating the building and hiring new staff
in preparation for opening Chicas Locas. 
It is undisputed that the club was not open for business during that
time.  Appellants contend that this means
the club was not continuously operated and therefore lost its nonconforming use
status, thereby losing standing to pursue an exemption and maintain this
subsequent appeal.  Appellees, however,
contend that although the club was not open for business during parts of July
and August, they were nevertheless continuing to operate an SOB at that
location by renovating the club, hiring new employees, and otherwise preparing
for the changed format.  They also
contend that whether or not they were in continuous operation under the statute
is not a matter of standing but of capacity.








We agree with appellees= latter contention.  We need not
interpret whether the club here was Acontinuous[ly] operated@ under the facts as applied to this ordinance.[3]  It is clear that here appellees are
personally aggrieved by the Board=s decision; regardless of whether they were qualified to apply for the
exemption under the ordinance, they did file an application, which was rejected
on the ground that the SOB violated the ordinance=s location restrictions, not because the club was no longer considered
a nonconforming use by virtue of its failure to continuously operate.  Section 3.02 refers to the nonconforming use
designation as a Astatus,@ which speaks more to appellees= authority or capacity to challenge the Board=s decision rather than whether appellees have a justiciable interest
in the controversy.  If the City had
alleged that the exemption should be denied on the ground that appellees had
not continuously operated as required under section 3.02, and if the Board had
rejected the application on that basis, appellees would have had standing to
appeal that decision because they would have been personally aggrieved by it,
i.e., they would not have been able to continue to operate their business.  Here, the result is the same:  the Board=s decision bars appellees from operating their business.  Therefore, we conclude and hold that whether
the club was continuously operated does not affect appellees= standing to challenge the Board=s decision here; rather it is an issue of capacity that appellants
should have raised as an affirmative defense in their pleadings below.  See Tex.
R. Civ. P. 93(1)-(2); Lovato, 171 S.W.3d at 849; Coastal
Liquids, 46 S.W.3d at 884 (holding that whether foreign corporation=s failure to properly register with Secretary of State barred
corporation=s claim was
issue of capacity rather than standing). 
We overrule appellants= first issue.

                                       Preservation
of Error

In their
second issue, appellants contend that appellees waived their procedural due
process claims by failing to assert them before the Board.  Appellees argue that they were not required
to preserve their claims before the Board, but even if they were, they did so.

 

 

 








Applicable Facts

As grounds for their summary
judgment motion in the trial court, appellees alleged that they were denied due
process of law in the proceedings before the Board because

(A) [they were] denied
cross[-]examination of witnesses and evidence in two (2) particulars:  (1) individual citizens were allowed to give
opening statements which were reportedly not to be part of the underlying administrative
record or evidence being considered  by
the Board (and therefore not subject to cross[-]examination) but such testimony
and comments by such citizens were specifically referenced by Board members as
part of the basis for their denial of the exemption; and (2) the refusal of the
[administrative law judge (ALJ)] to allow further examination or
cross[-]examination of witnesses after the completion of questioning of such
witnesses by the very Board members who were sitting in judgment; and (b) [sic]
the [Board] fail[ed] to make findings of fact and conclusions of law.  [Citations omitted.]








The hearing took place before
the Board, with an ALJ, who was not a member of the Board, presiding.  The first part of the hearing consisted of
commentary from members of the general public who attended the hearing.  According to section 5.02(A) of the Board=s rules of procedure, this commentary was not to be considered as
evidence for purposes of the hearing. 
License & Amortization Appeal Bd. Rules of Procedure ' 5.02(A) (Dec. 16, 2002).  Six
citizens voluntarily spoke during the public comment portion of the hearing,
and the City later called three of these as witnesses during the evidentiary
portion of the hearing.  All six were
opposed to appellees= being
granted an exemption.  The record shows
that some of the public comment was met with audible applause.

After the first person spoke
during the public comment part of the hearing, the following exchange occurred:

[APPELLEES= COUNSEL]:  It=s my understanding I=m not
allowed to cross[-]examine people that - -

 

[ALJ]:  No.
This is not evidence.

 

[APPELLEES= COUNSEL]:  I just wanted to make sure.

 








After the public comment section of the hearing concluded, the
evidentiary part of the hearing began. 
Appellees, who had the burden to prove entitlement to the exemption by a
preponderance of the evidence, presented their witnesses first.  Arlington,
Tex., Code, Sexually Oriented Business Ordinances art. III, '
4.11(G); License and Amortization Appeal Bd. Rules of Procedure '
5.01.  The ALJ, in keeping with the Board=s
written procedures, allowed the City, through its counsel, to cross-examine
each witness; he also allowed the parties to redirect and recross.  See License and Amortization Appeal Bd.
Rules of Procedure '
5.02(D)B(G).  However, after both sides were finished, the
ALJ also allowed the Board members themselves to ask questions of the
witnesses.[4]  However, after the Board members questioned
the witnesses, the ALJ refused to allow appellees=
counsel to further question witnesses to clarify matters raised in response to
the Board=s
questions.

 

Specifically, after the
evidentiary part of the hearing began and after several Board members had
questioned one of appellees= witnesses, appellees= counsel asked if he could clarify some matters with that witness:

[ALJ]:  Any
further questions from the Board?  The
witness may be excused.  Thank you.

 

[APPELLEES= COUNSEL]:  Some questions, some of the things I C

 

[ALJ]:  I
beg your pardon?

 

[APPELLEES= COUNSEL]:  Because of some of the questions [from the
Board], I have some additional questions for the witness if that=s
appropriate to clarify.

 

[ALJ]:  I
don=t
think that=s
necessary for this witness.  You=ve
had two opportunities to examine the witness.








[APPELLEES= COUNSEL]:  I=d also like the record to
reflect that the testimony was coming from the general public in the answer to some
of the questions.[5]

 

[ALJ]:  The
Board cannot accept testimony from the general public.

 

My
instructions to it will be that they accept only testimony that I=ve admitted into evidence. 

At the conclusion of
testimony from another witness, appellees= counsel stated,

[APPELLEES= COUNSEL]:  Just a clarification.  I assume all witnesses, once the Board asks
questions, we=re
not asking further questions.

 

[ALJ]: 
Right.

 

[APPELLEES= COUNSEL]:  Thank you. 

 

Analysis








Ordinarily, to preserve a
complaint for our review, a party must have presented to the trial court a
timely request, objection, or motion that states the specific grounds for the
desired ruling, if they are not apparent from the context of the request,
objection, or motion.  Tex. R. App. P. 33.1(a); see also
Tex. R. Evid. 103(a)(1).  Here, appellees raised their due process
arguments in the trial court; however, appellants claim that appellees waived
them by failing to raise them at the Board hearing.

In appeals from state agency
contested case hearings under the Administrative Procedure Act (APA), an
appellant waives any arguments not set forth in a timely motion for rehearing
except for agreed appeals and appeals from decisions in emergency cases.  Tex.
Gov=t Code Ann. '' 2001.144(a)(3)-(4), .145(a) (Vernon 2000); Entergy Gulf States,
Inc. v. Pub. Util. Comm=n, 173 S.W.3d 199, 210 (Tex. App.CAustin 2005, pet. denied).  This
requirement ensures that the aggrieved party has exhausted all administrative
remedies before seeking judicial review of the agency=s decision.  Lindsay v.
Sterling, 690 S.W.2d 560, 563 (Tex. 1985); Brown v. Tex. Dep=t of Ins., 34 S.W.3d 683, 687 (Tex.
App.CAustin 2000, no pet.).  The
purpose of a motion for rehearing is to put the agency on notice as to the
errors alleged by the party seeking judicial review.  Suburban Util. Corp. v. Pub. Util. Comm=n, 652 S.W.2d 358, 364 (Tex. 1983); Brown,
34 S.W.3d at 687.








But the APA applies only to state
agency hearings; it does not govern hearings of the Board pursuant to the
City=s SOB ordinance.  See Tex. Gov=t Code Ann. '' 2001.001, .003(7) (Vernon 2000 & Supp. 2006) (providing that the
APA is meant to provide uniform procedures for state agencies, which are
defined as parties with statewide jurisdiction that make rules or determine
contested cases).  The SOB ordinance does
not provide for any rehearing by the Board; it provides only for an appeal from
the Board=s decision
to the district court.  Arlington, Tex., Code, Sexually Oriented
Business Ordinances art. III, '' 4.08(B)-(C), 4.09.  Thus,
appellants exhausted all of the administrative remedies available to them
before seeking judicial review of the Board=s decision.








Moreover, appellees= counsel did seek confirmation from the ALJ that he would not be able
to cross-examine members of the public who made remarks during the public
commentary; he also requested to ask further questions of at least one witness
after Board members had questioned that witness, and he also confirmed with the
ALJ that he would not be able to ask follow-up questions of any other witnesses
after similar questioning of that witness by the Board.  It was clear that the ALJ understood
appellants= concerns
because he specifically instructed the Board that the public commentary was not
to be considered as evidence.  See
Tex. R. App. P. 33.1(a)(1)(A); cf.
Hassan v. Greater Houston Transp. Co., No. 01-05-00494-CV, 2007 WL 495242,
at *4 (Tex. App.CHouston [1st
Dist.] Feb. 15, 2007, no pet. h.) (holding that complaint about jury charge was
preserved when trial court clearly understood complaint and ruled on it).  Section 5.02(A) of the Board=s rules of procedure specifically provides that public comment will be
taken before a Board hearing, and those same procedures do not provide for
applicants to challenge the Board=s procedures.  License and
Amortization Appeal Bd. Rules of Procedure ' 5.02(A).  Accordingly, we hold
that appellants did not waive the contentions in their motion for summary
judgment that the Board=s decision
could not be upheld because of due process concerns related to the public
comment portion of the Board hearing and the ALJ=s refusal to allow appellants to requestion witnesses after the Board
members asked questions of those witnesses.

Accordingly, we hold that
appellees did not waive their complaints upon which the trial court granted
them summary judgment.  We overrule
appellants= second
issue.

                                    Procedural
Due Process








In their third issue,
appellants claim that appellees failed to establish their entitlement to
summary judgment on their due process claims because (1) they had no liberty or
property interest in the operation of an SOB in the specific location, (2) they
were given a sufficient opportunity to cross-examine all adverse witnesses, and
(3) they cannot prove harm.

Whether
Appellees Have Property or Liberty Interest Entitling Them to Procedural Due
Process

The
Fourteenth Amendment to the United States Constitution provides, in pertinent
part, that no state may deprive any person of life, liberty, or property,
without due process of law.  U.S. Const. amend. XIV.  Procedural due process requires that a
governmental entity=s deprivation
of life, liberty, or property, even if consistent with substantive due process,
must Abe implemented in a fair manner.@  United States v. Salerno,
481 U.S. 739, 746, 107 S. Ct. 2095, 2101 (1987).  The first inquiry in any due process claim
under the United States Constitution is whether the plaintiff has been deprived
of a protected property or liberty interest. 
Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59, 119 S. Ct.
977, 989 (1999).








Appellants argue that
appellees had no constitutionally protected liberty or property interest
requiring procedural due process by virtue of their nonconforming use status;
in other words, because appellees could validly operate only by virtue of a
location exemption, they were not entitled to due process protections in the
exemption hearing.  See Ky. Dep=t of Corr. v. Thompson, 490 U.S.
454, 460-62, 109 S. Ct. 1904, 1908-09 (1989) (holding that protected liberty
interests may arise from the Due Process Clause itself or the laws of the
states and that a state creates a protected liberty interest by placing
substantive limits on official discretion, such as Amandating the outcome to be reached upon a finding that the relevant
criteria have been met@); City
of Univ. Park v. Benners, 485 S.W.2d 773, 778 (Tex. 1972) (A[P]roperty owners do not acquire a constitutionally protected vested
right in property uses once commenced or in zoning classifications once made.@).[6]








However, appellants do not
address appellees= reliance on
Lewis v. Metropolitan Savings and Loan AssociationCa Texas Supreme Court case holding that an administrative decision
fails for arbitrariness if it does not comply with procedural due processCrather than the Due Process Clause. 
550 S.W.2d 11, 16 (Tex. 1977).  In
Lewis, the appellees contended that the appellant, the Savings and Loan
Commissioner, denied them procedural due process during an administrative
hearing by excluding Acompetent
and material evidence@ proffered
by the appellees.  Id. at 12.  The Commissioner contended that the
administrative decision could not be considered arbitrary if it was supported
by substantial evidence, so any procedural irregularities were irrelevant as
long as substantial evidence existed to support his decision.  Id. at 13.

The supreme court recognized
that there can be evidence in the administrative record that qualifies as
substantial, yet the parties may have also been denied due process and the
rudiments of fair play in the conduct of the proceeding.  Id. at 13-14.  The court also noted that in that case in
particular and in similar administrative cases in which the decision maker is
also a fact-finder, it was difficult or impossible to tell whether the improper
exclusion of evidence (and, hence, the denial of due process) affected the
result of the proceeding.  Id. at
15.  Accordingly, the court concluded and
held that Aarbitrary
action of an administrative agency cannot stand [regardless of whether there is
substantial evidence supporting the agency=s decision].  There is
arbitrariness where the treatment accorded parties in the administrative
process denies them due process of law.@  Id. at 16.








Under Texas law regarding
administrative hearings, appellees in this case were entitled to procedural due
process during the administrative hearing before the Board.  See id. at 13; J.B. Adver., Inc. v.
Sign Bd. of Appeals of the City of Carrollton, Tex., 883 S.W.2d 443, 448-49
(Tex. App.CEastland
1994, writ denied); Closs v. Goose Creek Consol. ISD, 874 S.W.2d 859,
874 (Tex. App.CTexarkana
1994, no writ).  Accordingly, we reject
appellants= argument
that the Board=s decision
was not subject to reversal for failure to comply with procedural due process.

Denial
of Opportunity to Fully Examine Witnesses

Appellants
next contend that appellees had no due process right to cross-examine or
re-examine witnesses after the Board members individually questioned them upon
the completion of appellants= and appellees= direct and
cross-examinations.








At a minimum, due process
requires notice and an opportunity to be heard at a meaningful time and in a
meaningful manner.  Mathews v.
Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 
902 (1976); see Univ. of Tex. Med. Sch. at Houston v. Than, 901
S.W.2d 926, 930 (Tex. 1995).  Exactly
what process is due in a given situation is measured by a flexible standard
that depends on the practical requirements of the circumstances.  Mathews, 424 U.S. at 334, 96 S. Ct. at
902; see Than, 901 S.W.2d at 930. 
The flexible standard balances the following three factors:  (1) the private interest affected by the
state action; (2) the risk of erroneous deprivation of a constitutionally
protected interest under the procedures used and the likely benefit of any additional
procedures; and (3) the government=s interest, including the fiscal and administrative burdens that
additional procedural requirements would entail.  Mathews, 424 U.S. at 335, 96 S. Ct. at
903; see Than, 901 S.W.2d at 930. 
ABasic due process requires that when a decision maker is called upon
to make a decision grounded on evidence, the parties involved should be
provided fair notice and a meaningful opportunity to present their evidence.@  United Copper Indus., Inc.
v. Grissom, 17 S.W.3d 797, 805 (Tex. App.CAustin 2000, pet. dism=d as moot).

In administrative proceedings,
due process requires that parties be accorded a full and fair hearing on
disputed fact issues.  City of Corpus
Christi v. Pub. Util. Comm=n, 51 S.W.3d 231, 262 (Tex. 2001); Hammack
v. Pub. Util. Comm=n, 131 S.W.3d 713, 731 (Tex. App.CAustin 2004, pet. denied).  At a
minimum, it requires that the Arudiments of fair play@ be observed.  Hammack,
131 S.W.3d at 731 (quoting State v. Crank, 666 S.W.2d 91, 94 (Tex. 1984)
(op. on reh=g)).  This is not to say that administrative
hearings must measure up to judicial standards, but even they cannot be
arbitrary or inherently unfair.  City
of Corpus Christi, 51 S.W.3d at 262 (citing Bexar County Sheriff=s Civil Serv. Comm=n v. Davis, 802 S.W.2d 659, 664 (Tex.
1990), cert. denied, 502 U.S. 811 (1991)).  Moreover, the Board=s own rules of procedure provide that the City may cross-examine any
witnesses called by the applicant and that the applicant, in turn, may
cross-examine any witnesses called by the City. 
License and Amortization Appeal Bd. Rules of Procedure ' 5.02(E), (G). 








AIn almost
every setting where important decisions turn on questions of fact, due process
requires an opportunity to confront and cross-examine adverse witnesses.@  Goldberg v. Kelly, 397
U.S. 254, 269, 90 S. Ct. 1011, 1021 (1970). 
Cross‑examination is a safeguard essential to a fair trial and a
cornerstone in the quest for truth; longstanding principles of our
jurisprudence recognize the right and necessity of full and complete cross‑examination.  Davidson v. Great Nat=l Life Ins. Co., 737 S.W.2d 312, 314
(Tex. 1987).  The right to cross-examine
a witness is a substantial one, and it is error to so restrict it as to prevent
the cross‑examining party from going fully into all matters connected
with the examination in chief.  Id.  AThe right to cross[-] examine adverse witnesses and to examine and
rebut all evidence is not confined to court trials, but applies also to
administrative hearings.@  Richardson v. City of Pasadena, 513
S.W.2d 1, 4 (Tex. 1974) (emphasis added).

In addition, the limitation
of redirect can limit a party=s rights:

Re‑direct is intended
to permit the witness to explain answers given on cross‑examination and
to amplify new material elicited for the first time.  The intent is to prevent the jury from being
left with a false and incomplete picture created by the latitude counsel is
afforded on cross‑examination and counsel=s ability to use leading questions. 
It is sometimes said that re‑direct examination for this purpose
is a matter of right.

Sims v. Brackett, 885 S.W.2d 450, 455 (Tex. App.CCorpus Christi 1994, writ denied).








The Texas Rules of Evidence
give the trial court Areasonable
control over the mode and order of interrogating witnesses and presenting
evidence so as to [among other things] (1) make the interrogation and
presentation effective for the ascertainment of the truth . . . .A  Tex. R. Evid. 611(a) (emphasis added).[7]  A fair opportunity for the parties to prove
their respective cases is essential to an administrative hearing comporting
with due process.  J.B. Adver.,
883 S.W.2d at 449.  Denial of such an
opportunity affects the ability of the fact-finder to ascertain the truth of
the dispute.  See Tex. R. Evid. 102 (providing that the
rules of evidence Ashall be
construed to secure fairness in administration, . . . to the end that the truth
may be ascertained and proceedings justly determined@); Sims, 885 S.W.2d at 455.








Here, appellees were afforded
an opportunity to perform direct examinations of their own witnesses and to
cross-examine the City=s
witnesses.  However, appellees were
denied the right to redirect or recross witnesses after the Board members
themselves had asked those witnesses questions. 
Some of the Board members= questions raised matters not explored by either party on direct
examination or cross-examination; however, the ALJ refused to allow appellees
to ask further questions even after new matters were raised by Board members.

For example, after an
extensive direct, cross, redirect, and recross of Al Lozano, the general
manager of Chicas Locas, the following exchange occurred when the Board was
allowed to question Lozano:

Q. 
Okay.  Who is Alan Fitzgerald?

 

A.  One of
the managers.

 

Q.  Is he
bilingual?

 

A.  No, he=s
not.

 

Q.  Were
you on duty on December 19th about midnight, when they had the big fight in the
parking lot?

 

A.  No, I
was not.

 

Q.  Alan
Fitzgerald was the manager on duty, right?

 

A.  Yes.

 

Q.  You=re
aware, I=m
sure, that under the Ordinance it clearly states that the licensee, which you
know, is the manager, also, who represents the licensee, has to be fully in
possession and control of the premises and activities that go on at all times.

 








If you=ve got a 99 percent male, 80
percent Hispanic patronage, and you[r] manager at midnight doesn=t
speak Spanish, how do you maintain control?

 

A.  He=s not
the only manager.  We don=t - -
we have more than one manager at all times in a night shift.

 

Q.  But
ultimately, somebody is in control.

He=s in charge, right?

I mean, you know, you can=t - -
somebody has got to be the man.

 

A.  We
delegate different responsibilities for different managers.  I don=t have one that=s
just totally over the night shift.

 

Q.  Well,
who=s in
charge of parking lot fights?

 

A.  We don=t
have anybody in charge of parking lot fights.

 

Q.  But,
you see my point.  You had an issue
there, you=ve
got a bad problem with - - the police had to respond to it, you had a fight in
the parking lot.

 

And nobody was real sure what happened because
one of the reasons is, the manager couldn=t communicate with the customers
who were having the fracas.

 

Would that be an accurate observation?

 

A.  Yes.

 

The fight referenced by the Board member was not
raised by either party in their direct or cross-examinations.  Other Board members asked Lozano questions
about matters not raised in either the direct or cross-examinations.








In addition, after appellants= final re-cross of Lozano but before the Board members= questioning, the ALJ stated that he was going to Alimit recross and redirect to issues that were explicitly raised in
the previous testimony.@  However, the ALJ placed no such limitations
upon the Board members= questions.

Another example of this
limitation occurred after appellees and appellants finished questioning Dave
Hardin, appellees= property
values expert; the Board members then questioned him extensively.  After Hardin testified about the club=s lack of impact on property values, Board member Knezek noted that
very few of the properties that Hardin had examined in determining that the club
did not have an impact on surrounding property values had increased in value;
thus, it appeared that the area around the club was stagnant and that the
operation of the club could have no effect on surrounding property values.  Hardin responded, AOh no, . . . I wouldn=t form that conclusion, no, ma=am.  It could - - you could have
a stagnant area and an adult entertainment facility actually harm the
area.  You sure could.@  When Board member Knezek asked
if that meant that the commercial area was Aon its way down,@ Hardin
responded that, yes, the appraisal board had reduced values on all commercial
properties in the area on which the owners had protested their appraised
values.








Another Board member quizzed
Hardin about whether lights and noise from the club could be seen from a nearby
residential property.  The only reference
to noise made before this question was by two citizens during the
nonevidentiary public comment portion of the hearing.  Hardin answered that as to lights, AI would think you could, yes, sir.@  But with respect to noise, he
said he wouldn=t know how
to answer that.  Finally, a third Board
member got Hardin to admit that the appraised value data he had testified about
would apply solely to La Bare since appraised values for surrounding properties
had been set before Chicas Locas was opened that year.  After the Board=s questioning of Hardin, appellees= counsel made his initial request to ask additional questions for
clarification purposes, which the ALJ denied.








The tenor of the Board
members= questions to these two witnesses was, at times, confrontational, as
if the Board members had placed themselves in an adversarial role, conducting
cross-examination instead of neutrally gathering information to assist in their
fact-finding role.  See Tex. State Bd.
of Med. Exam=rs v. Nacol, 696 S.W.2d 687, 688 (Tex. App.CBeaumont 1985, writ ref=d n.r.e.) (holding that Board of Medical Examiners= decision was Amade upon
unlawful procedure@ because,
among other things, A[t]he Board
acted like prosecutors rather than fact[-]finders and, in voting, used the word
>guilty= to the
allegations, rather than >true.=@).  Although the cases involving
due process rights speak mostly to the preservation of the right of
cross-examination, here, even though appellees were allowed to initially
examine and cross-examine witnesses, they were deprived of the opportunity to
fully explore all factual issues, including new issues, raised by the Board=s questions during appellees= case-in-chief and the City=s case-in-chief.  See J.B.
Advertising, 883 S.W.2d at 449 (holding that procedure by which the
appellant=s attorney
was allowed to present questions to Chair of Board, who then referred those
questions to the witness, denied the appellant the right to cross-examination
of witnesses, thus denying appellant due course of law).  Thus, the ALJ=s refusal to allow appellees the opportunity to further redirect after
the Board members= questions
was in contravention of the truthseeking nature of an adversarial, evidentiary
hearing and could have affected the fact-finder=s ability to ascertain the truth in this case.  We conclude and hold that the ALJ denied
appellees the procedural due process that they were entitled to during the
hearing by refusing to allow appellees to re-examine witnesses after the Board
members had asked questions of those witnesses.








It is difficult if not
impossible to gauge the effect of this restriction on the result of the
proceeding because we do not know what testimony may have been elicited had the
ALJ not denied appellees the right to re-examine the witnesses.  See Lewis, 550 S.W.2d at 15-16.  This difficulty is compounded by the
difficulty in determining the effect, if any, of the public comment portion of
the hearing on the Board members.  Although
the commentary is supposed to be nonevidentiary and the ALJ specifically told
the Board not to consider it, at least one Board member asked a question of one
of appellees= witnesses
that could have been based on the public comments.[8]








Appellants point to the fact
that the APA provides for public comment in state agency hearings.  See Tex.
Gov=t Code Ann. ' 2001.029.  However, the APA
does not apply here because the City and Board are not state agencies.  See id. ' 2001.003(7).  In addition, this
section of the APA applies to rulemaking hearings, not to contested case
hearings.  Id. ' 2001.029.  Rulemaking hearings
are different from contested case hearings in that Arulemaking procedures maximize >public participation in the rulemaking process,= a stated purpose of the APA, while contested case procedures limit
participation to those directly affected by the dispute.@  R.R. Comm=n of Tex. v. WBD Oil & Gas Co.,
104 S.W.3d 69, 77 (Tex. 2003) (footnote omitted).  Here, the Board hearing is akin to a
contested case, which the APA defines as Aa proceeding, . . . in which the legal rights, duties, or privileges
of a party are to be determined by a state agency after an opportunity for an
adjudicative hearing.@  Tex.
Gov=t Code Ann. ' 2001.003(1).  Thus, the APA
does not support the practice of allowing unsworn public comment that is not
subject to cross-examination in an adjudicative proceeding such as this one.








Based on our review of the
entire record,[9]
we hold that appellees= procedural
due process rights were violated by the restrictions on appellees= full and complete examination of public commentators and witnesses at
the hearing.  The active, almost
prosecutorial tone of the Board=s comments, when combined with the inability to discern whether the
Board impermissibly took into account public commentary that was not available
for cross-examination, leaves the impression that the hearing was inherently
unfair to appellees.  Therefore,
appellees conclusively proved that the Board=s decision could not be upheld because it is arbitrary and
capricious.  See Lewis, 550 S.W.3d
at 16.  Because an arbitrary decision
cannot be upheld even if supported by substantial evidence, there are no fact
issues that would preclude summary judgment and require a remand, as urged by
appellees.[10]  See id.  We overrule appellants= third and fourth issues.

                                             Conclusion

Having overruled appellants= four issues, we affirm the trial court=s judgment.

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

 

DELIVERED:
June 14, 2007











[1]See
id. '
4.09(B) (AThe
substantial evidence standard of review shall apply to such appeal.@).  The substantial evidence standard of review
is deferential; it is generally described as a Alimitation
on the power of the courts to overturn a decision of an administrative agency .
. . . [unless it] is illegal, arbitrary or capricious; that is, that it is not
reasonably supported by substantial evidence.@  Bd. of Fireman=s
Relief & Ret. Fund Trs. v. Marks, 150 Tex. 433, 242 S.W.2d
181, 182-83 (1951); Peaster ISD v. Glodfelty, 63 S.W.3d 1, 5 (Tex. App.CFort
Worth 2001, no pet.).





[2]Appellees
acknowledge in their brief that they advanced the no-findings-of-fact ground
only in the alternative; therefore, our review of the trial court=s
decision is limited solely to the cross-examination issues. 





[3]Accordingly,
we also need not decide appellants= contentions regarding the
construction of section 3.02. 





[4]Section
5.02(M) of the Board=s
rules of procedure provides that ABoard members may ask
questions of the participants in the hearing at any point in the
proceedings.@  License and Amortization Appeal Bd. Rules of
Procedure ' 5.02(M).  But Aparticipants@ is
not defined, so it is unclear to whom this term refers:  to the parties, attorneys, or witnesses only,
or to any person participating in the proceedings?  If we assign Aparticipants@ its
ordinary meaning of Aone
that participates@ in
the proceedings, Webster=s Third New International Dictionary 1646
(2002), then presumably it applies even to those citizens who participate in
the public comment section of the hearing, even though that public comment is
supposed to be nonevidentiary in nature and, therefore, not for consideration
by the Board.





[5]It is
not clear from the record whether testimony Awas coming from the general
public in the answer to some of the questions.@  [Emphasis added.]  The record does show that Craft, who was not
testifying at the time, volunteered an answer about whether nearby property was
occupied; however, his answer did not appear to be related to anything said in
the public comment section of the hearing. 
If a member of the public who was not a witness at the evidentiary part
of the hearing volunteered testimony at that time, it is not shown in the
record.  However, counsel=s
comment for the recordCmade
after requesting to ask additional questions of the witness after the
individual Board members questioned that witnessCcan
also be construed as a complaint that some of the Board members=
questions appeared to presume facts stated in some of the citizens=
remarks made during the public comment portion of the hearing.





[6]See
also Hang On III, Inc. v. Gregg County, 893 S.W.2d 724, 726 (Tex.
App.CTexarkana
1995, writ dism=d by
agmt.) (citing Benners for proposition that landowner has no
constitutionally protected right to operate an SOB); Smith v. Copeland,
787 S.W.2d 420, 422 (Tex. App.CSan Antonio 1990, no writ)
(holding same); City of Houston v. MEF Enters., Inc., 730 S.W.2d 62, 63
(Tex. App.CHouston
[14th Dist.] 1987, no writ) (holding same).





[7]The
Board=s
rules of procedure provide that A[t]hese Rules of Procedure
shall govern the proceedings of the Board in all cases.  Robert=s Rules of Order Revised
shall govern only when these rules are silent.@  License and Amortization Appeal Bd. Rules of
Procedure '
2.04.  The rules do not incorporate the
Texas Rules of Evidence; however, they do address certain evidentiary matters
by providing that the public comments are not evidentiary, that a party=s
evidentiary documents will not be admitted except for good cause unless timely
filed according to the Board=s rules, and that certain
evidence may be excluded upon a party=s motion.  Id. ''
4.04, 5.02(A), 5.03.





[8]One
of the Board members asked Hardin about whether noise from the club could be
heard from one of the residential properties near the club.





[9]See,
e.g., Lewis, 550 S.W.2d at 15 (stating that court=s
determination of whether administrative agency has discharged its duty to fully
consider all surrounding facts and circumstances in fairness and justice to the
competing parties Arequires
an examination of the whole record@).





[10]Our
holding should not be read as determining whether substantial evidence exists
to support the Board=s
ruling.  The trial court=s
order simply provides appellees with another opportunity to present their
evidence to the Board in a fair and adequate hearing.