**Opinion filed December 10, 2010**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00353-CV

_____

## IN RE JOSEFINA MORENO

### Original Mandamus Proceeding

## M E M O R A N D U M   O P I N I O N

Juan Moreno and Jaime Moreno filed a petition for writ of mandamus complaining of the trial court's order appointing a temporary guardian for their mother, Josefina Moreno. Because Juan and Jaime have not carried their burden of proof, we deny the petition.

### I. *Background Facts*

Delfa Rodriguez, Josefina's daughter, filed an application for the appointment of a temporary guardian of the person and estate of Josefina. The trial court scheduled a hearing. Juan and Jaime filed a motion for continuance. The trial court denied their motion and conducted the hearing. The trial court found by clear and convincing evidence that an imminent necessity existed for the appointment of a temporary guardian, and it appointed Delfa temporary guardian of the person and estate of Josefina. The trial court gave Delfa the authority to consent to medical treatment for Josefina; to make arrangements for Josefina's housing, including the authority to place her in an assisted care facility; to administer any government funds Josefina received; and to apply for insurance or public benefits in Josefina's name.

## II. *Issues*

Juan and Jaime challenge this order with four issues. They argue that the evidence was insufficient because Delfa's application was based upon an outdated and incomplete physician's report, that the trial court abused its discretion by denying their motion for continuance, that the trial court erred by naming Delfa temporary guardian, and that the trial court denied them their due process rights.

## III. *Standard of Review*

To be entitled to the extraordinary relief of a writ of mandamus, Juan and Jaime must show that the trial court abused its discretion and that there is no adequate appellate remedy. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding).

Clear and convincing evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (Vernon 2008). When reviewing factual findings required to be made by clear and convincing evidence, we apply a standard of review that reflects this burden of proof. In evaluating the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In doing so, we assume the factfinder resolved disputed facts in favor of the finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* In a factual sufficiency review, we must also determine whether a factfinder could reasonably form a firm belief or conviction about the truth of the allegations. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not have reasonably formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

IV. *Discussion*

A. *Sufficiency of the Evidence.*

Juan and Jaime complain first that the trial court erred when it found that Josefina was totally incapacitated because Delfa did not file a medical report in compliance with TEX. PROB. CODE ANN. § 687 (Vernon Supp. 2010). Juan and Jaime, however, fail to appreciate that this was not a guardianship proceeding but was a temporary guardianship proceeding. Consequently, the application was governed by Section 875.

Section 875 does not require a medical report or a recent medical exam. Delfa's application for temporary guardianship did, however, include a medical report. The physician's name is illegible, but the report indicates that the physician saw Josefina six times from January 5, 2010, through June 22, 2010. The physician reported that Josefina suffers from several physical conditions, including Parkinson's disease; that she has "SEVERE" cognitive impairment, suffering from Alzheimer's dementia and anxiety disorder; and that she is totally incapacitated.

Juan and Jaime complain that, because the physician last saw Josefina on June 22, the trial court could not consider these findings. Section 687 requires that the physician's report be less than 120 days old and be based upon an examination performed not earlier than the 120th day before the filing of the application. Delfa filed her application on October 29. Josefina's last exam was, therefore, 129 days before the filing of the application. Nonetheless, the trial court did not err by considering the physician's report. First, Section 687 does not apply to an application for temporary guardianship. Second, Juan and Jaime did not object to the report at any time before or during the hearing.

The date of the last examination is a relevant factor, but it does not require rejection of the physician's findings. The trial court could consider that the physician's findings were corroborated by lay witnesses. Lesvia Vela, a friend of Josefina, testified that it is obvious that Josefina suffers from Parkinson's and dementia. Delfa testified that her mother has declined. Delfa's daughter, Erika Rodriguez, testified that her grandmother has deteriorated and that she needs to be taken care of. The physician's report was contradicted by one witness, Ben Dominguez. He works for the Department of Family and Protective Services, and he investigated allegations involving Josefina. According to Dominguez, the Department determined that Josefina did have the mental capacity to make her own decisions. The trial court

could, however, reasonably conclude that a physician was in a better position to evaluate Josefina's competency than the Department. The trial court could also consider that the physician's determination was based upon several examinations and that Parkinson's and dementia are permanent and debilitating conditions. If so, the trial court could find the evidence that Josefina was incapacitated credible and could form a firm belief or conviction that she was in need of a temporary guardian. Issue One is overruled.

### B. Continuance.

Juan and Jaime next complain that the trial court abused its discretion by denying their motion for continuance. They asked the court to continue the hearing to give them more time to secure an expert witness. Section 875(f)(1) requires the trial court to hold a hearing on an application for appointment of a temporary guardian within ten days of the filing of the application unless the hearing date is postponed pursuant to Section 875(f)(2). In this instance, the court can postpone the hearing for a period not to exceed thirty days after the filing date of the application. The application was filed on October 29. The hearing was held on November 23. Juan and Jaime's motion for continuance reflects that the hearing had been previously reset once, but the mandamus record does not indicate why.

The trial court did not abuse its discretion by denying the motion for continuance. The court was required to hold the hearing within thirty days of October 29. Because November 25 was Thanksgiving, the November 23 setting was, essentially, at the end of the statutory deadline. The court could, potentially, have moved the hearing one day to November 24, but it is clear from the record that this would not have allowed Juan and Jaime time to secure an expert. Issue Two is overruled.

### C. Delfa's Appointment.

Juan and Jaime argue in their third issue that the trial court erred by appointing Delfa temporary guardian because (1) Josefina fears her, (2) Delfa expelled Josefina from her house, and (3) Josefina had expressed a preference to stay with her sons. Despite the disparaging comments about Delfa in the wording of their third issue, Juan and Jaime do not cite this court to a single record reference supporting the allegations that Josefina fears Delfa or that Delfa expelled Josefina from her home. We have independently reviewed the entire record and find absolutely no evidence to support either accusation. There are cross-examination questions and side-bar comments from counsel suggesting all manner of bad behavior by Delfa and her

4

witnesses, but these accusations were always denied and their denials were never refuted by any witness. Counsel's comments are not evidence, and these accusations should not have been repeated in this manner without evidentiary support.

Dominguez did testify that Josefina expressed a desire to stay with one of her sons rather than live with Delfa. But Erika testified that last September her grandmother called and said that she wanted to come back. Erika and her father went to Jaime's house, but he prevented them from taking Josefina. And by this time, Josefina had changed her mind and had decided to stay. According to Erika, the time from Josefina's phone call to her subsequent decision to stay with Jaime was only fifteen minutes. If the trial court found Erika's testimony credible, it could reasonably discount any expression of preference by Josefina.

The trial court could reasonably consider evidence that Delfa had taken care of both of her parents for several years and that, prior to her deterioration, Josefina had been appreciative of this support. The trial court could similarly consider testimony from a hospice nurse, who provided services to Josefina's husband, that Delfa provided her parents with excellent care; Dominguez's testimony that Adult Protective Services investigated a complaint against Delfa and found no grounds for any charges against her; and Delfa's testimony that she was very knowledgeable about her mother's health and had made arrangements in her home to take care of her mother. For example, Delfa had a room that would accommodate a wheelchair and a bathroom with bars in the shower and next to the toilet.

Finally, Juan and Jaime argue that Delfa has an interest adverse to Josefina. In support of this, they point to the application, which included a request for the authority to place Josefina in an assisted living center, and they contrast this with Delfa's testimony that her intent was to keep Josefina in her home. This may be grounds for cross-examination, but it is insufficient to create an adverse interest.

The trial court had sufficient evidence upon which to conclude that Delfa was an appropriate person to name as temporary guardian. Issue Three is overruled.

*D. Due Process.*

In their last issue, Juan and Jaime complain that their due process rights were violated when the trial court imposed time limits on the hearing. The hearing began at 2:00 p.m. The trial court announced that it had several other matters scheduled for that day beginning at

2:30 p.m. and, therefore, that each side would be given fifteen minutes. Juan and Jaime complain that this time constraint prevented consideration of many issues.

Juan and Jaime recognize that trial courts have substantial discretion when managing their docket. Every trial court has the inherent power to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants. *Metzger v. Sebek*, 892 S.W.2d 20, 38 (Tex. App.—Houston [1st Dist.] 1994, writ denied). The control given the trial judge must be exercised reasonably, and a party must be given a fair opportunity to present its case so that the factfinder may ascertain the truth. *Sims v. Brackett*, 885 S.W.2d 450, 455 (Tex. App.—Corpus Christi 1994, writ denied).

Ordinarily, limiting a party to fifteen minutes to present its case in such an important situation would be disconcerting. But the trial court was, for all practical purposes, at the end of the statutory period available to hold a hearing. It had four other matters scheduled for that afternoon, including three juvenile procedings. Each side received fifteen minutes because that was all the time that the court could give them.

It is important to also appreciate that this was a *temporary* guardianship proceeding to consider if an interim arrangement was necessary until a regular guardianship proceeding could be held. Juan and Jaime suggest that the attorney ad litem wanted to continue the hearing. However, what he said was:

> Your Honor, I've not had an opportunity to speak with my client, but what does concern me is that we do have the medical issues, the diagnoses. I believe the doctor would have enough to be able to recognize that there is cognitive impairment due to the Alzheimer's and the dementia issues.
>
> So I think that if it's going to be continued that that is certainly fine, but I think that what needs to be done is the temporary guardianship needs to be put into place pending the next hearing.

The attorney ad litem did not attempt to continue the temporary guardianship hearing, and he has not joined Juan and Jaime's mandamus proceeding. The trial court has set a hearing to consider the appointment of a permanent guardian on February 8. Juan and Jaime will have ample opportunity to secure an expert before then. Nothing the trial court did at the temporary guardianship hearing will prejudice their ability to present all of their evidence at that hearing.

The trial court was presented with evidence indicating that a temporary guardianship might be necessary and, for all practical purposes, could only consider that request on

6

November 23.  The trial court, therefore, did not deny Juan and Jaime's rights to due process. Issue Four is overruled.

## V.  *Conclusion*

The petition for writ of mandamus is denied.


RICK STRANGE

JUSTICE


December 10, 2010

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.